This case is before the court, without oral argument, on defendant’s motion for summary judgment and plaintiffs cross-motion. The two issues presented are (1) whether plaintiffs removal by the Navy from and reassignment outside the nuclear field was contrary to regulation or violative of due process, or (2) whether plaintiffs enlistment extension should have been cancelled upon plaintiffs transfer outside of the nuclear field. For the reasons discussed herein, upon consideration of the briefs of the parties and the record, we hold against plaintiff on all his claims.
On July 24, 1969, plaintiff, Sampson Thomas Bullock, Jr., enlisted in the United States Navy for a 4-year period. On August 15, 1969, in return for special training in the Nuclear Field Program, plaintiff extended his enlistment for two additional years. On October 10, 1969, plaintiff completed basic training and received training as an electrician’s mate. Plaintiff then completed the Nuclear Power Fundamental Course and Nuclear Power School. *514 Following Nuclear Power School, plaintiff was assigned to the Naval Nuclear Power Training Unit at Idaho Falls, Idaho. At Idaho Falls, plaintiff was discharged on August 2, 1971, to enable him to reenlist immediately, thus extending his obligated service period to August 3,1977. In return for another extension, the Navy approved plaintiffs request for a 36-month assignment at Idaho Falls as an instructor at the Naval Nuclear Power Training Unit. On October 23, 1974, plaintiff executed an 11-month extension of service, obligating him to serve until July 2,1978, the date when his 36-month instructor assignment would expire.
On November 17, 1975, plaintiff pleaded guilty to the unlawful possession of marijuana (a misdemeanor) in the Seventh Judicial Court, Bonneville, Idaho, a state tribunal. Plaintiff was fined $175 and received a 90-day suspended sentence and 6 months probation. On December 17, 1975, the commanding officer of the Naval Nuclear Power Training Unit in Idaho Falls wrote to the Chief of Naval Personnel, indicating plaintiffs legal difficulties. Plaintiffs commanding officer no longer considered plaintiff fit for work on nuclear reactors and recommended that plaintiffs Navy Enlistment Classification Code (nec) be changed so that any further assignment in the nuclear field be precluded. On January 30, 1976, the Chief of Naval Personnel excluded plaintiff from eligibility for assignment to duty in connection with naval nuclear propulsion plants. Because of this assignment outside of the nuclear area, plaintiff was no longer eligible to receive a monthly bonus for enrollment in the program.
Plaintiff was thereupon transferred to shipboard duty. On April 6, 1977, plaintiffs new command inquired as to whether the 11-month extension was valid. On June 10, 1977, the Chief of Naval Personnel responded that plaintiff had received the benefit of his assignment to instructor duty for which he had extended his enlistment 11 months. As his subsequent transfer was the result of his own action, the extension agreement was not cancelled.
Plaintiff was absent without authorization from May 21 through May 23, 1977. On May 25, 1977, plaintiff was absent again without authorization. Plaintiff received nonjudicial punishment for these absences. On August 3, 1977, *515 plaintiffs 11-month extension began and from October 1 through October 19, 1977, plaintiff was again absent without permission. For this absence plaintiff forfeited one-half of one-month’s pay and a suspended reduction in rank. On January 17, 1978, before the expiration of his extension, plaintiff was honorably discharged for the convenience of the government.
Plaintiff argues that the Navy failed to follow the applicable regulations when it reassigned him and that the reassignment without a hearing violated due process. As a result, plaintiff seeks to recover the nuclear service specialty pay that he lost when he was assigned out of the nuclear program. Plaintiff also claims his final 11-month extension was invalid because once the Navy transferred him out of the nuclear program it breached the extension contract. Plaintiff argues that since the extension was unlawful, the Navy had no jurisdiction to administer a penalty for any absence that occurred during the final 11-month period.
Plaintiff and defendant disagree over the relevant regulations to be applied to plaintiffs removal from the nuclear program. We agree with defendant that Bureau of Naval Personnel Instruction (bupersinst) 1110.21A "Changing or Removing Navy Enlisted Classification Codes for Nuclear Propulsion Plant Operators” applies. The relevant provision ¶ 4.6 states—
c. nec Removal. Removal of an nec is an administrative action taken when a member’s commanding officer considers him no longer suitable for assignment to duties in the specialty represented by that nec. A recommendation to remove an NEC shall not be submitted in lieu of appropriate disciplinary action * * *. Recommendations for removal of nuclear propulsion plant operator nec’s should be submitted in the following cases:
* * * * *
(2) When personnel demonstrate a lack of reliability for assignment to duty in connection with supervision, operation and maintenance of a nuclear propulsion plant because of a serious offense or repeated minor civil/military offenses, indebtedness, loss of eligibility for security clearance, etc. For example, a recommendation for nec removal shall be submitted in the case of an individual convicted, in civil or military proceedings of an *516 offense classified as a felony. Recommendations should include a summary of the individual’s performance and action taken by the command (e.g., cancellation of security clearance or recommendation for administrative discharge) which substantiates unreliability as a nuclear propulsion plant operator.
Plaintiffs admission and conviction of possessing marijuana could clearly demonstrate to his comMánding officer a lack of reliability and suitability based on a sterious offense. Such a decision by the commanding officer is Sanctioned by the regulation. The commanding officer’s recommendation was subsequently approved by the Chief of Naval Personnel, and thus the regulation was complied with. Plaintiff, however, argues that under this regulation he could only be transfered for conviction of a felony. Plaintiff misreads the regulation. The regulation broadly states when a commanding officer should change a classification, e.g., serious offenses, indebtedness, etc. However, the regulation then goes on to require á change in classification for conviction of a felony. Plaintiffs change in classification was accomplished under the broader demonstration of "a lack of reliability for assignment to duty” criterion and not the conviction of a felony.
Plaintiff, however, contends that the above regulation was not the proper one for the situation, and that instead bupersinst 1306.64G applied, requiring procedures different from those the Navy followed. It is clear, though, that bupersinst 1220.32A does apply, as the regulation’s express purpose was to provide criteria "for removing or changing Navy Enlisted Classification Codes used to designate personnel trained as nuclear propulsion plant operators.” In the instant case plaintiffs NEC was changed by removing his designation as a nuclear propulsion plant operator. Therefore, we hold that the proper regulation was correctly applied by the Navy and we dismiss plaintiffs claim that his assignment out of the nuclear field was not accomplished according to regulations.
Plaintiff next argues that his constitutional right to due process was violated because his removal from the nuclear program was effected without a hearing. Plaintiff argues that he had a property right in continuing in the nuclear *517 program because of his agreement to extend his enlistment. The entitlement to pay of a member of the armed forces is dependent upon statutory right. Bell v. United States, 366 U.S. 393, 401 (1961); Abbott v. United States, 200 Ct.Cl. 384, 389, cert. denied, 414 U.S. 1024 (1973). Plaintiff could not have entertained the kind of reasonable expectation the Supreme Court has held is a property right, Board of Regents v. Roth, 408 U.S. 564 (1972), after he was convicted of possessing marijuana, because the regulation he says is applicable, bupersinst 1306.64G would have told him, if he had read it, that "* * * continuation in the Nuclear Field Program will be denied to an individual who has been convicted of or who is identified as having * * * used marijuana * * * or illegally or wrongfully possessed * * * same, whether prior to or after entry into active service.” The due process clause is only available to defend liberty or property interests. Arnett v. Kennedy, 416 U.S. 134, 164 (1974) (concurring opinion). Thus, if procedural due process was not accorded plaintiff, his claim is still not of constitutional magnitude. The really relevant regulation, bupersinst 1220.32A, quoted supra, provides for removal where personnel demonstrate a lack of reliability for assignment because of a serious offense. Thus, plaintiffs continuation in the program was premised on his demonstrating reliability. Once he committed the offense of possession of marijuana, he demonstrated a lack of reliability, triggering the change in classification. A hearing would serve no purpose as there were no facts in dispute. Simply stated, plaintiffs conviction of possession of an illicit substance was enough to terminate his continuation in the nuclear program. Therefore, we hold that plaintiff had no property interest in continued service in the nuclear program. The regulation granted broad discretion to the Navy, and plaintiff by his own voluntary conduct acted in a manner contrary to regulation, thus triggering his reclassification, which was effected as the relevant regulation prescribes. •
Plaintiff last asserts that his assignment out of the nuclear program invalidated his enlistment extension, and that since his unexcused absence occurred during this invalid extension, the punishment issued by the Navy was *518 unlawful. We disagree. The relevant regulation, Bureau of Naval Personnel Manual, Article 1050150, provides in part—
9. Command officers shall cancel agreements to extend enlistment, prior to operative date:
* * * * *
C. Except as provided below, when a member, through no fault of his/her own, has received none of the benefits for which the extension was executed by the day next preceding the operative date of the extension. Thus, if a member executed an agreement to extend enlistment and has not been ordered or assigned to duty, such as duty ashore, overseas service, or any special program, for which he/she agreed to extend or has not had his/her PRD adjusted, not been advanced, or has not received any benefits therefrom, by the day next preceding the date the extension would become operative, the agreement to extend enlistment shall be cancelled. [Emphasis supplied.]
In return for the extension, plaintiff did receive the bargained for benefit of an assignment as a nuclear instructor However, plaintiff was clearly at fault when he was convicted of possessing marijuana. Since his resulting transfer out of the nuclear field was a result of his conviction, plaintiff cannot claim that the Navy breached the terms of the enlistment agreement. Had plaintiff not violated the regulation, he would have retained his bargained for benefit. Therefore, any punishment plaintiff received during his extension was not invalid as plaintiffs enlistment extension remained valid. We do not wish to be understood as holding a seaman is exofierated of all offenses committed during an enlistment extension de facto effective if it was at law unauthorized. We do not reach that question.
For the reasons discussed herein, defendant’s motion for summary judgment is granted and plaintiffs cross-motion for summary judgment is denied. Plaintiffs petition is hereby dismissed.