**Gerald B. MULHOLLAND, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 316–81C.**

United States Claims Court.

May 31, 1984.

---

Kurt R. Thornbladh, Ann Arbor, Mich., for plaintiff.

Steven J. Riegel, Madison, Wis., with whom was Acting Asst. Atty. Gen. Richard K. Willard, David Cohen and Thomas W. Petersen, Capt. Richard D. Rosen and Maj. Wayne H. Price, Dept. of the Army, Washington, D.C., of counsel.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

YANNELLO, Judge.

Gerald B. Mulholland, the plaintiff in this military pay case, is an enlisted member of the United States Army Reserve. In October 1980, plaintiff was involuntarily released by defendant from a two year tour of special active duty for training [SADT] as an Army Reserve recruiter. Defendant took this personnel action subsequent to an investigation of plaintiff for the alleged procurement, in January 1980, of an illegal reservist enlistment.

In the present action, plaintiff challenges the termination of his active duty recruiting tour. He seeks restoration of the pay, allowances, benefits and retirement credits he would have earned but for the curtailment of his tour. In addition, plaintiff requests the elimination of "improper" entries from his military personnel file, and an award of costs, interest and disbursements.

This matter is before the court upon cross-motions for summary judgment, and the material facts are not in dispute.

After review of the motions and of the entire record and after oral argument (following which, in April 1984, the parties made supplemental submissions), it appears that this case is ripe for disposition on the motions. For the reasons set forth herein, defendant is entitled to judgment as a matter of law, and plaintiff's petition is to be dismissed.

### I.  *Factual Background*

As noted above, the facts material to resolution of the cross-motions for summary judgment are undisputed.[1] Plaintiff entered active service in the United States Army on January 10, 1968. After honorable service in the Republic of Vietnam, plaintiff was transferred to the United States Army Ready Reserve on January 10, 1970 to fulfill his remaining service obligation.

On February 4, 1974, and again on February 4, 1975, plaintiff reenlisted for successive one year terms in the Ready Reserve. Upon expiration of the second enlistment, plaintiff reenlisted for a period of six years to begin February 4, 1976. Plaintiff has since entered a fourth term as a member of the Army Reserve.

In the course of his military service, plaintiff has served in several positions of responsibility. These include drill sergeant, race relations and equal opportunity operations sergeant and Reserve recruiter. In addition, plaintiff has availed himself of military educational opportunities by completing several courses, among which were a 52-hour Reserve Component Recruiting and Reenlistment course and other Reserve recruiting courses of shorter duration.

On October 15, 1976, plaintiff received orders to report for a two-year active duty tour as an Army Reserve recruiter for the 300th Military Police (POW) Command. This tour was shortened to 128 days, and, effective February 27, 1977, plaintiff resumed active Reserve status. Plaintiff continued to serve as a recruiter for his unit, earning high ratings and a number of commendations and awards for his superior performance in that assignment. On June 12, 1979, plaintiff was reassigned to a Reserve Control Group pending a second SADT recruiting tour.

On September 26, 1979, plaintiff was ordered to report for SADT under the Army Reserve Long Tour Management Program

---

1.  *See* Plaintiff's Brief In Support of [sic] Defendant's Motion for Summary Judgment, at page 3.

for enlisted personnel. The orders directed plaintiff to report to the Detroit, Michigan District Recruiting Command [DRC] as of October 1, 1979 to begin his two-year tour as an Army Reserve field recruiter. Plaintiff entered upon active duty as ordered and continued to receive awards for his skill and productivity in recruiting.

In October 1979 Timothy May, an individual with prior service in the Army, contacted plaintiff concerning enlistment in the Army Reserve. During his first term of military service, May was absent without leave (AWOL) from his unit for a period of seven days. In addition, May desired to enlist at the same grade he had held at the time of his discharge some ten years earlier.

Under Army Regulation [AR] 140–111, former service-members seeking enlistment in the Army Reserve may not enlist without approval by the DRC commander if they were AWOL for 1–15 days during their prior period of service. Further, absent express waiver from the DRC commander, an individual with prior service may not enlist at the same grade held at discharge if that discharge took place more than 30 months previous to enlistment in the Reserves. *See* AR 140–111, Table 2–5. Army regulations and federal law provide that a recruiter who fails to abide by these requirements may be subject to court martial. *Id.* at pars. 1–5, 1–6a; *see also* 10 U.S.C. § 884 (1976).

On January 18, 1980, plaintiff processed Timothy May for enlistment in the Army Reserve. Although plaintiff had not received the requisite lost time and grade determination waivers, he nevertheless completed the enlistment papers for May and had him sworn in by Captain Gary C. Bauer that afternoon.

Second Lieutenant Janet A. Piette, the Army Reserve Operations Officer for the DRC, learned of May's enlistment without proper waivers on February 5, 1980. She recommended to the DRC commander that plaintiff be disciplined for obtaining an illegal enlistment. The commanding officer of the Detroit DRC, in turn, initiated a preliminary investigation of the incident, and, based upon information in the report of that inquiry, the U.S. Army Midwest Region Recruiting Command conducted a formal investigation from March 18 to March 21, 1980.

Both the preliminary and the formal investigation were conducted in accordance with U.S. Army Recruiting Command [USAREC] Regulation 601–45 (December 19, 1977) and the Manual for Courts-Martial [MCM], par. 33a (1969) (Rev.).

After being advised of his rights against self-incrimination pursuant to the Fifth Amendment and Article 31 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 831 (1976), plaintiff made statements to the investigating officers in both the informal and formal inquiries. He stated that he was aware of the fact that waivers were required for the enlistment of Timothy May and acknowledged that he had, indeed, secured May's enlistment without those waivers.

However, plaintiff claimed to have received oral authorization to process May from Sergeant First Class [SFC] Edward J. Thiel, who served as the Army Reserve Operations Noncommissioned Officer for the Detroit DRC. Plaintiff further asserted that such verbal authorizations were common practice among his fellow recruiters, who would regularly procure enlistments without formal waivers upon telephone approval by the DRC.

When questioned by the investigating officers, SFC Thiel denied ever having given verbal approval for May's enlistment, and, further, maintained that he was not in the DRC office on the day plaintiff claimed to have spoken with him. Further, other recruiters interviewed during the investigations testified that enlistment prior to waiver approval was not a common practice in the Detroit DRC. Several recruiters indicated that, while verbal authorizations had been given in the past, 2LT Piette had communicated to the recruiting staff her intention to have all enlistments processed according to regulations. When asked during the formal investigation to relate spe-

cific instances of enlistments processed without the required waivers, plaintiff failed to do so.

At the conclusion of the formal investigation, the investigating officer Captain John C. Carley[2] determined that plaintiff had illegally enlisted Timothy May in the Army Reserve. As a result, he recommended that plaintiff be relieved from duty as a recruiter and that his SADT tour be terminated. By memorandum dated April 9, 1980, Judge Advocate for the Army Midwest Region Recruiting Command agreed that plaintiff had committed a dishonest or unethical recruiting practice by virtue of substantial evidence in the record and supported his relief, reclassification and reassignment in accordance with AR 135–200 and USAREC Reg. 601–45.[3]

On April 14, 1980, the commander, Midwest Region Recruiting Command, informed the commander of the Detroit DRC that the formal investigation substantiated plaintiff's recruiter malpractice and directed that plaintiff be suspended from recruiting duty. Plaintiff's commanding officer, Lieutenant Colonel [LTC] Dan H. Campbell, ordered his relief from recruiting duty on May 5, 1980 and suspended his proficency pay pursuant to USAREC Reg. 600–19, par. 4a(1). LTC Campbell also directed a letter to the Midwest Region Commander recommending plaintiff's permanent release from recruiting duty, rescission of plaintiff's recruiter specialty rating, and termination of plaintiff's SADT tour. He notified plaintiff of these proposed actions on May 5, 1980 and advised plaintiff of his right to prepare a rebuttal.

The commander of the Midwest Recruiting Region reviewed LTC Campbell's recommmendations and plaintiff's appeal letter of May 28, 1980. After further review by the staff Judge Advocate, the recommendations were forwarded to the Commanding General, USAREC, who ordered plaintiff released from SADT and reclassification of his military occupation specialty.

Accordingly, plaintiff was removed from active duty effective October 31, 1980, transferred briefly to an Army Reserve Control Group and reassigned to his former Reserve unit on January 19, 1981.

On May 7, 1981, plaintiff filed with the United States Court of Claims a Petition Pending Motion for Discovery and subsequently, on November 16, 1981, filed a petition for relief.

## II. *Statutes and Regulations*

The chief argument advanced by plaintiff is that his release from SADT did not comply with the procedures required by the regulations. At the outset it is important to define the primary regulations which are in dispute here.

First, there is Army Regulation 135–178, which is entitled "Separation of Enlisted Personnel" of the "Army National Guard and Army Reserve". The regulation here in issue was promulgated effective 15 August 1977 and superseded the regulation of 30 December 1969. The regulation noted that "local supplementation of this regulation is permitted but is not required". The regulation closed with a notation that it was issued "By Order of the Secretary of the Army: Bernard W. Rodgers, General, United States Army, Chief of Staff" and "Official: Paul T. Smith, Major General, United States Army, The Adjutant General".

This regulation provides, on its face, that it applies only to "separation" of members from the Army National Guard and the Army Reserve, and, moreover, that "separation" of members serving on active duty (AD) and on Initial Active Duty for Training (IADT) will be governed by other appropriate active-component regulations.

---

**2.** At the time of his appointment as investigating officer, CPT Carley was assigned to the U.S. Army Atlanta District Recruiting Command. He was not under the direct command of the Detroit DRC commander, but, rather, was brought in from outside of that command by Headquarters, USAREC, to conduct the investigation.

**3.** The Judge Advocate also found that the evidence would not warrant prosecution under the UCMJ, because of the higher standard of proof required in criminal actions.

Plaintiff's arguments do not address this regulation and it is noted here only because of its mention in a circular, described below, which is the subject of controversy between the parties.

Second, there is Army Regulation 635–200, which is entitled "Personnel Separation", relates to "Enlisted Personnel" which was initially effective 1 March 1978 and which, by its terms, was a "complete revision of AR 635–200". Separation proceedings begun before the effective date of this regulation were to be completed according to regulations and changes in effect at the time of initiation. Again, the regulation notes that "local supplementation of this regulation is permitted but not required". This regulation closed with a notation that it was promulgated "By Order of the Secretary of the Army: Bernard W. Rogers, General, United States Army, Chief of Staff" and "Official: J.C. Pennington, Brigadier General, United States Army, The Adjutant General".

The relevant portion of this regulation provides that administrative separation on grounds of unsuitability may be undertaken by a hearing board if the action is based upon conduct which "[h]as been the subject of administrative proceedings resulting in a final determination that the member should be retained in the service". (Par. 1–19b.(2)). The facts here reveal that, after review of the investigative report and plaintiff's rebuttal, the service elected not to separate plaintiff from the service but chose instead to remove him from his SADT tour as a recruiter.

Third, there is Army Regulation 135–200 entitled: "Active Duty Training and Annual Training of Individual Members" of the "Army National Guard and Army Reserve". As stated therein, this regulation prescribes procedures for ordering members to active duty for training (ADT) and procedures for special active duty training (SADT) tours. The regulation closes with the notation that it was issued "By Order of the Secretary of the Army: Bernard W. Rogers, General, United States Army, Chief of Staff" and "Official: J.C. Penning-

ton, Brigadier General, United States Army, The Adjutant General".

The relevant portions of this regulation provided, in paragraph 1–8, for involuntary release of National Guard or Army Reserve personnel. One criterion for such release was "when it is determined that their degree of efficiency and manner of performance require such action". It further included definitions for members who were "unqualified", "inefficient" or "unsuitable". The officer initiating the removal was required to give, in writing, specific reasons for recommending the release, with supporting authority, and the member was then to have 15 days in which to submit comments or a rebuttal. (The member was also to be given an opportunity to submit a written request for voluntary release or decline to submit such a request in writing.)

Fourth, there is Department of the Army (DA) Circular 140–13, which is entitled "Personnel—General" with respect to "United States Army Reserve Long Tour Management Program—Enlisted" which was effective 15 March 1979, and was to expire on 31 March 1980, but was extended (by interim change number I01) to 15 March 1982. Chapter 1, General, outlines the purposes of the program:

1–1. *Purpose.* This program is designed to provide a highly qualified corps of US Army Reserve (USAR) enlisted personnel to meet support requirements for USAR projects and programs. This program effective 1 February 1979 establishes:

    *a.* Policies, responsibilities and procedures pertaining to the personnel management of USAR enlisted personnel serving on active duty (AD) ... or special active duty for training (SADT) tours in excess of 179 days.

Chapter 6 of this Circular is entitled "Release from Active Duty [AD] or Active Duty for Training [ADT]", and states:

6–1. *Release from AD/SADT tours.* The release of members participating in the program prescribed by this circular will be governed by the policy outlined in

AR 635–200 (for AD) and 135–200 (for SADT) as further modified or expanded in this chapter.\* [Note supplied]

---

\* This refers to the regulations described immediately above.

The chapter continues with respect to discharges which accompany releases, although such provision is not relevant here since plaintiff was not discharged:

6–2. *Discharge concurrent with release from AD/SADT.* Discharge from the USAR concurrent with release from AD/SADT will be governed by AR 135–178.

The circular also provides, in section 1–2, captioned "Policy", that:

[W]here the provisions of this circular conflict with existing Army regulations, this circular will apply.

The circular closes with the notation that it was issued "By Order of the Secretary of the Army: Bernard W. Rogers, General, United States Army, Chief of Staff" and "Official: J.C. Pennington, Major General, United States Army, The Adjutant General". For ease of reference, this circular shall hereinafter be referred to as the "DA circular."

In short, the circular provides that it, and AR 135–200 would apply to a release of a member, such as plaintiff, from a SADT tour. Under the terms of the circular, neither AR 635–200 nor AR 135–178 would be applicable to a release from SADT. This circular, being the subject of controversy between the parties, will be discussed in greater detail in the following section of this opinion.

Finally, there is USAREC Regulation No. 601–45, entitled "Personnel Procurement, Alleged Recruiting Malpractice and Irregularities", which was effective 19 December 1977 and superseded USAREC Regulation No. 601–45 of 12 September 1975. This regulation "prescribes policies and responsibilities governing the reporting, investigation, and disposition of alleged recruiting and enlistment processing

irregularities within the command" and was applicable to "all personnel assigned or attached to the US Army Recruiting Command". This regulation prescribes a number of procedures relating to the investigation of alleged improprieties, and also contains procedures to be followed when such investigations are underway, including, in section 6. n.:

When there is substantial evidence that malpractice has occurred, the recruiters involved will be relieved from recruiting duties and will be used in positions that do not involve direct contact with potential enlistees. Additionally, the actions described in paragraph 4b will be initiated.

and, in section 4.b.:

Regardless of any disciplinary action that may be taken, when there is substantial evidence that a member of this Command has committed a recruiting/processing malpractice, he will be relieved from recruiting duties, reclassified, and reassigned outside the Command, without exception, .... See USAREC Circular 614–1, Reassignment of Recruiters, regarding procedures for reassignment of recruiting personnel.

This USAREC regulation closes with a notation that is clearly different from that appearing in Regulations AR 635–200 and AR 135–200 and in the DA Circular. Specifically, the USAREC notation states that it is issued "For The Commander: Shirley R. Heinze, Colonel, GS, Chief of Staff" and "Official" John Foster, Colonel, GS, Director, Recruiting Force Management."

This regulation, dealing only with investigatory procedures rather than with the personnel action to be taken as a result thereof, neither conflicts with nor is relevant to Regulations AR 635–200 and AR 135–200 and DA Circular discussed above. Nothing in the terms of this regulation, including the portions quoted above, precludes taking additional action such as discharge or release.[4]

---

**4.** Plaintiff's reference to the provisions of paragraph 6.k.(6) of this regulation concerning

counsel is also not persuasive. There is no conflict between this provision dealing with in-

With respect to statutes involved, it is noted that plaintiff cites and relies upon 10 U.S.C. §§ 265, 266. A brief review of those provisions, however, reveals that they are inapposite to the present case.

Section 266 deals with the participation of reservists in boards convened for the purpose of appointment, promotion, demotion, and other personnel actions involving Reserve members and which require hearing boards. Nothing in the statute, however, would mandate a board hearing procedure in all cases and, as provided in the regulations cited above and discussed in greater detail below, no such hearings were called for.

Section 265 deals with the participation of reserve officers in the administration of policies and regulations affecting the reserves. Plaintiff contends that the USAREC regulation noted above, No. 601–45, violates this statute in that it is not apparent that reservists participated in its promulgation. The plaintiff's construction of the statute is unduly restrictive. The statute requires only the presence of such officers and their participation in administering (although not necessarily promulgating) policies and regulations affecting the reserve components. Moreover, as noted above, this regulation merely provides for investigatory procedures and it was not the basis for the personnel action taken against plaintiff nor for his release.

The actions of which plaintiff complains are those which were taken pursuant to the DA Circular, and Regulation B, described above. It is to the controversy concerning these provisions which we turn in our discussion.

### III. *Discussion*

Plaintiff's moving brief, filed December 16, 1982, begins with a variety of allegations concerning the deficiencies of the USAREC regulation. However, as discussed above, these arguments are inapposite here. The plaintiff's formal release from his SADT tour was not implemented pursuant to this or any other USAREC regulation or circular. Rather, this personnel action was implemented pursuant to, as is contended by defendant, the DA Circular.

Certain initial questions arise concerning the DA Circular. The first question to be addressed is whether the AR 635–200 is applicable to the personnel action taken here. The parties expend considerable effort in this argument but, in view of our ultimate conclusion set forth below, little need here be said.[6]

The second question to be addressed is the applicability of the circular to plaintiff's tour of SADT. Since that tour was begun in September 1979 and concluded with plaintiff's release from SADT in October 1980, and since the DA circular was in effect from March 1979 to March 1982, it is clear that the circular was in effect during all periods relevant here.

■ The third question is whether the DA circular superseded the terms of AR 635–200. The court finds that it does, for a variety of reasons. First, the circular, like the regulations, notes that it was issued by Order of the Secretary, and both contain

vestigations and the provisions of the circular dealing with post-investigation administrative proceedings. The regulation does no more than define the traditional role of counsel during the investigation of a suspected offense and does nothing to limit the effectiveness of counsel's assistance during the preparation of the rebuttal provided for under the terms of the circular.

**6.** It should be noted, however, as was stated by the court during oral argument, that unambiguous definitions contained in a regulation will prevail and the terms of a regulation apparent from its face will be applied by the court. It is not enough for the government to provide affidavits that the Army does not so interpret the

regulation, which is a statement of fact which will not outweigh the clear and unambiguous language of the regulation itself—which has the force and effect of law. Similarly, it is not sufficient for the agency to employ internal or term-of-art definitions to a regulation which, on its face, clearly and unambiguously uses the terms in broader fashion. While agency expertise and familiarity may be given deference in some situations, the agency would be well advised to rely upon such deference to a lesser extent and instead to promulgate extent regulations which on their face clearly state what is intended.

the approval of the same individual as Chief of Staff, General Rogers, and of The Adjutant General. This, then, is a prima facie showing that the circular was promulgated under the same authority, and with the same force and effect, as the regulations.[7] Although plaintiff offers bald and sweeping assertions to the contrary, plaintiff has pointed to no evidence whatever which, if introduced, would dispute this prima facie showing so as to raise a *genuine* dispute as to the material fact of the manner in which the circular and the regulations were promulgated.

■ The fourth question is whether the DA circular, having been found to have the same force and effect of a regulation, conflicted with or superseded the AR 635–200 and 135–200. Here, of course, the language of the circular itself, as noted in the footnote above, provides that it shall prevail in any conflict with the regulations. Moreover, the circular specifically addresses both these regulations, and states that AR 635–200 shall apply only to releases from active duty; while AR 135–200 shall apply to releases from Special Active Duty for Training (both of which are as modified or expanded by the circular).

■ The fifth question in this regard is whether the procedures applied with respect to plaintiff complied with the requirements of the DA circular. The court finds that they did and plaintiff offers little if any persuasive argument to the contrary.

Under DA Circ. 140–13 and AR 135–200, a recruiter may be involuntarily released from SADT upon commission of acts in violation of the UCMJ (Uniform Code of Military Justice) or after involvement in unfavorable incidents. Although neither the regulation nor the circular provides for a hearing, they do allow for investigation of the grounds for removal, formal presentation of these grounds with supporting

evidence to the individual subject to removal, and a 15-day period for rebuttal of the allegations before the issuance of a final determination. DA Circ. 140–13, par. 6–3*d.*; AR 135–200, par. 1–8*d.* These procedures were complied with in connection with plaintiff's release.

The final argument raised by plaintiff concerns an alleged absence of due process in connection with the procedures followed in his personnel action. The court finds no merit in this contention and need do no more than point to the many cases in which such a discussion has been undertaken in the past. *See, e.g., Keef v. United States,* 185 Ct.Cl. 454, at 463 and 467 (1968); *Bullock v. United States,* 227 Ct.Cl. 513 (1981); *Crispino v. United States,* 3 Cl.Ct. 306, 313 (1983).

The additional argument raised by defendant concerning plaintiff's alleged failure to exhaust its administrative remedies is not discussed in view of the decision on other grounds set forth herein. Suffice it to say that the remedies defendant addresses are apparently permissive rather than mandatory in the situation here present.

### CONCLUSION OF LAW

Based upon the foregoing, it is concluded that defendant's Motion for Summary Judgment is GRANTED; plaintiff's Cross-Motion is DENIED; and the petition is to be dismissed. Costs to the prevailing party.

---

7. Moreover, the circular, promulgated by the same individuals who promulgated the regulations, contains clear provisions that, in the event of conflict, the circular prevails over the regulations. (Such a statement in any document is not, in and of itself, sufficient as a matter of law

to supersede regulation provisions, but does so here because it is also found that the circular was issued pursuant to the same authority and with same force and effect as were the regulations).