Joseph A. **FAUSTO**, Appellant,

v.

The **UNITED STATES**, Appellee.

**Appeal No. 85–2272.**

United States Court of Appeals,
Federal Circuit.

May 14, 1986.

Joseph A. Fausto, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for appellee. Deborah S. Ryan, Office of the Solicitor, Dept. of the Interior, Washington, D.C., of counsel.

## ON SUGGESTION FOR REHEARING IN BANC

Before RICH, BALDWIN, and BISSELL, Circuit Judges.

## ORDER

BISSELL, Circuit Judge.

Following this court's original decision in this appeal, *Fausto v. United States,* 783 F.2d 1020 (Fed.Cir.1986), the government filed a suggestion that the case be reheard by the court in banc. The basis for the suggestion is the government's belief that

the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedent of this circuit: *Block v. Community Nutrition Institute,* [467 U.S. 340,] 104 S.Ct. 2450 [81 L.Ed.2d 270] (1984); *Bush v. Lucas,* 462 U.S. 367 [103 S.Ct. 2404, 76 L.Ed.2d 648] (1983); *United States v. Erika, Inc.,* 456 U.S. 201 [102 S.Ct. 1650, 72 L.Ed.2d 12] (1982); *United States v. Connolly,* 716 F.2d 882 (Fed.Cir.1983) (*en* [sic] *banc*), *cert. denied,* [465 U.S. 1065] 104 S.Ct. 1414 [79 L.Ed.2d 740] (1984).

"A majority of the circuit judges who are in regular active service" have not ordered

that the appeal be reheard by the court in banc. *See* Federal Rules of Appellate Procedure 35. However, because of the importance of the issue the panel will treat the suggestion as a petition for rehearing.

There has been no oral argument on the suggestion and Fausto, *pro se*, has not been ordered to respond to the government's brief. The panel has carefully reviewed the arguments and the authority cited in the government's brief. We conclude that the panel's original decision is not contrary to the precedent of the Supreme Court, nor of this court, and is not in conflict with the decisions of the regional circuits.

The government presents two questions for our review:

    1. Whether the comprehensive remedial scheme established by Congress in the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (CSRA), precludes review of claims of former federal employees for back pay by the United States Claims Court under the Tucker Act.

    2. Whether, prior to the enactment of the CSRA, there would have been jurisdiction under the Tucker Act to entertain Mr. Fausto's claim.

We first address the latter question.

## I  *The Tucker Act*

In its original opinion, this panel observed: "There is no doubt that prior to the CSRA an employee in Fausto's situation could have maintained a suit in the Court of Claims." *Fausto*, 783 F.2d at 1021. The government argues to the contrary that even if the CSRA had not been enacted Fausto "would not have had a Tucker Act cause of action."

■ First, the government argues that Fausto's removal did not violate any agency regulation. It is the government's position that the regulations which the agency violated, the grievance regulations, do not prescribe procedures that must be followed prior to removal. According to the government, "those regulations did not prescribe any pre-removal procedures," they only provided "that, *after* certain excepted service employees have been removed from their positions, they may file grievances to contest the validity of removal actions." [Emphasis in original.] We do not agree. The government is simply incorrect, the regulations do not require that grievances be filed only after the removal. Indeed, the regulations require that "[f]ormer employees must file a timely grievance concerning a matter appropriate for review under these procedures prior to separation in order to receive consideration." 370 DM 771.3.3B. Fausto clearly had the right to file his grievance before he was removed.

Second, the government argues that the grievance regulations would not have provided a basis for a Tucker Act suit because "the grievance regulations do not provide for the payment of compensatory damages." As support for that proposition the government cites *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), and *Spagnola v. Stockman,* 732 F.2d 908 (Fed.Cir.1984). However, the government has misread its authority.

■ The Supreme Court observed that [t]he Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.

  . . . .

. . . It follows that the asserted entitlement to money damages depends upon whether any federal statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. [599,] 607, 372 F.2d [1002,] 1009 [1967]. . . .

  . . . .

. . . Where the United States is the defendant and the plaintiff is not suing for money improperly ·exacted or retained,

the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1008, 1009. *Testan*, 424 U.S. at 398, 400–02, 96 S.Ct. at 954–55. The basis for the Tucker Act suit here is not the grievance regulation but the Back Pay Act. That statute "does authorize retroactive recovery of wages whenever a federal employee has 'undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of' the compensation to which the employee is otherwise entitled. 5 U.S.C. § 5596(b)." *Testan*, 424 U.S. at 405, 96 S.Ct. at 956. There is no dispute that Fausto has been affected by such a personnel action—the agency has admitted as much. In this circumstance, the statute "was intended to grant a monetary cause of action." *Testan*, 424 U.S. at 407, 96 S.Ct. at 957. Furthermore, this case is distinct from both *Spagnola v. Stockman*, 732 F.2d 908 (Fed.Cir.1984) (employee detailed to perform duties of higher-level position without additional compensation) and *United States v. Connolly*, 716 F.2d 882 (Fed.Cir.1983) (in banc) (as employee of Postal Service no statutory basis for pay), because in those cases there was no provision of law mandating payment of money.

## II  *The CSRA*

■ With respect to the panel's evaluation of the effect of the CSRA on the Tucker Act remedy otherwise available, the government asserts that "the enactment of the CSRA precludes direct judicial review of personnel claims by federal employees that are not subject to review under the remedial scheme of the CSRA." This proposition is said to be supported by the "over-whelming weight of appellate authority" in the Supreme Court, in this circuit, and in the regional circuits. We have carefully reviewed all the cited authority as well as the authority disclosed in our own research. We conclude that the panel's original decision is not contrary to the precedent in the Supreme Court, is fully consistent with the precedent of this circuit, and is not inconsistent with the decisions of the regional circuits (the apparent conflict, on thoughtful analysis, being no conflict at all).

Chapter 75 of the CSRA addresses adverse actions. The relevant portions of the CSRA, codified at 5 U.S.C. §§ 7511–7513 (1982), delineate certain rights provided to an "employee," as defined in § 7511. Deleting restrictions not pertinent to this discussion, for purposes of this portion of the CSRA an employee is defined to include "an individual in the competitive service" and "a preference eligible in an Executive agency in the excepted service." § 7511(a)(1). Fausto is not in the competitive service; he is in the excepted service. And although he is in an executive agency he is not a preference eligible. Accordingly, he is not an employee as defined in § 7511; he is not subject to the adverse action provisions of the CSRA. Consequently, we see no basis for the government's apparent concern that this decision will have an effect on those persons who are indeed subject to the adverse action provisions of the CSRA. This case deals solely with a person in an executive agency in the excepted service who is not a preference eligible. Moreover, there has been no argument about and we do not address whether, in the absence of the agency regulation, Fausto "as an [excepted service] employee, could have been summarily discharged by the [agency] at any time without the giving of a reason." *Vitarelli v. Seaton*, 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959).

### A.  *Supreme Court Precedent*

In *Block v. Community Nutrition Institute*, 467 U.S. 340, 104 S.Ct. 2450, 81

L.Ed.2d 270 (1984), the Supreme Court considered whether ultimate consumers of dairy products could obtain judicial review of milk market orders issued by the Secretary of Agriculture pursuant to an act of Congress. The Court concluded that consumers could not obtain judicial review of the orders. The analysis in *Community Nutrition* may support the proposition that employees subject to the adverse action provisions of the CSRA are precluded from direct judicial review but it is no support for the proposition that the CSRA has silently repealed a remedy for persons the CSRA does not cover. Recognizing that a Tucker Act remedy is still available to persons like Fausto who are not covered by the CSRA will in no way frustrate the statutory purpose of the CSRA, it will not undermine the congressional preference for an administrative remedy, *see McClary v. United States*, 775 F.2d 280 (Fed.Cir.1985) (employee with right to appeal to MSPB has no independent cause of action in Claims Court), and it will not disrupt administration of the congressional scheme. *See Community Nutrition*, 467 U.S. at 352, 103 S.Ct. at 2458. Those dangers might exist if the result of this case were to allow parallel proceedings to progress at the same time, *i.e.*, if there were an alternative route for those covered by the CSRA. But that is *not* the result. Indeed, barring judicial review here on the government's theory would mean there is " 'no forum' in which [the agency's] actions could or would be challenged." *Id.* Preclusion of such suits does pose a direct threat to realization of the statutory objectives of the Tucker Act and the Back Pay Act; those objectives with respect to persons like Fausto would no longer be realized through the specific remedy provided by Congress.

In *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982), the question was whether the Court of Claims had Tucker Act jurisdiction to review determinations by private insurance carriers of the amount of benefits payable under Part B of the Medicare statute. The court held that the Medicare statute "specifically precluded review in the Court of Claims." *Id.* at 206, 102 S.Ct. at 1653. The Court observed that Congress "explicitly" addressed disputes regarding benefits by specifically providing for layers of administrative review and granting judicial review "in two instances only," entitlement to benefits under Part A or Part B, and amount of benefits under Part A. *Id.* at 207, 102 S.Ct. at 1654. "Conspicuously, the statute fails to authorize further review for determinations of the amount of Part B awards." *Id.* at 208, 102 S.Ct. at 1654. It was in that context that the "omission provides persuasive evidence that Congress deliberately intended to foreclose further review." *Id.* Moreover, there was legislative history expressly stating the intent to bar judicial review of Part B disputes of this nature. H.R.Conf.Rep. No. 92–1605, p. 61 (1972) ("no authorization for an appeal to the Secretary or for judicial review on matters solely involving amounts of benefits under Part B").

In both *Community Nutrition* and *Erika* there was no jurisdiction because the very statute asserted to provide the substantive right relied on was instead interpreted to prohibit judicial review of its own provisions. The Court did not hold in either case that the relevant statute had repealed a substantive right granted in a different statute. It is essential to a proper understanding of this case to recognize that the issue is *not* whether the CSRA *authorizes* judicial review for persons in the excepted service. The issue is *not* whether persons in the excepted service are entitled to the protection afforded other federal workers by the CSRA. The issue is *not* whether the CSRA grants persons in the excepted service some kind of private right of action. Fausto makes no claim of entitlement under the CSRA and we do not resolve that issue in this case. The issue in this case is whether one act of Congress, the CSRA, has silently repealed other acts of Congress, the Tucker Act and the Back

Pay Act. The government asserts that it has. But its arguments, though appearing persuasive, are superficial and fail to directly address the issue. The thrust of its arguments, of its authority in the Supreme Court and in this circuit and in the other circuits, is that persons in the excepted service have no cause of action under the provisions of the CSRA and in that sense the CSRA does not authorize suit; that is to say, the government explains, the CSRA "precludes" judicial review and therefore, the government concludes, the CSRA bars judicial review under any basis in any forum.

Again, that is *not* the situation here. Whether the CSRA provides a basis for a cause of action for, or whether the CSRA instead precludes judicial review of, issues which the CSRA does cover is not at all the issue here. Neither *Community Nutrition* nor *Erika* supports the proposition that omission of any mention of an issue in one statute operates to repeal the grant of judicial review of that issue contained in a different statute. For example, the government does not argue that the CSRA bars judicial review for persons in the military or for civil servants employed by the legislative or judicial branches. Federal workers not included in the CSRA Chapter 75 definition of employee have found their claims sometimes rejected and sometimes accepted by the courts, but the courts' decisions have turned on considerations wholly apart from the CSRA. *See, e.g., Browning v. Clerk, United States House of Representatives,* 789 F.2d 923, (D.C.Cir.1986) (discharge of official reporter employed by House of Representatives; not justiciable because of the Speech or Debate Clause); *Walker v. Jones,* 733 F.2d 923 (D.C.Cir.1984) (discharge of manager of House of Representatives' restaurants not shielded from court consideration by Speech or Debate Clause); *Mulholland v. United States,* 5 Cl.Ct. 531 (1984) (involuntary release of enlisted member of Army reserve; release resolved on merits); *cf. Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (discharged deputy administrative assistant to Member of Congress has a cause of action implied from the Due Process Clause); *Hurick v. Lehman,* 782 F.2d 984 (Fed.Cir.1986) (complaint seeking reversal of discharge from Navy and award of all emoluments states a claim for money damages over which Little Tucker Act gives district court jurisdiction).

In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) a competitive service employee who had been improperly demoted for publicly criticizing his agency and who had prevailed in his administrative appeal, gaining restoration and backpay, sought a new nonstatutory damages remedy against his superior for violation of his first amendment rights. The question was "whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy." *Id.* at 388, 103 S.Ct. at 2416. Expressing a concern about "the addition of another remedy," *id.,* and "the impact of a new species of litigation between federal employees on the efficiency of the civil service," *id.* at 389, 103 S.Ct. at 2417, the Court declined to create a new remedy. "Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." *Id.* at 368, 103 S.Ct. at 2406.

Contrary to the government's argument here, the panel's decision is fully consistent with *Bush.* First, the panel's decision creates no "new judicial remedy." The remedy which Fausto seeks and which the panel approves is a statutory remedy. Furthermore, it is an old and thoroughly tested remedy; unlike the remedy Bush sought, the remedy approved here will not spawn "a new species of litigation." Second, ab-

sent the remedy sought here for persons in the excepted (as distinct from the competitive) service, there are no "meaningful remedies against the United States." Indeed, notwithstanding the existence of a valid agency regulation granting certain rights to Fausto and the agency's admitted violation of that regulation and the existence of Supreme Court case law binding the agency to abide its own regulation, *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), the government asserts that for persons in Fausto's circumstance there is not *any* review in *any* forum (administrative or judicial). We reject that argument.

The Court observed that "[f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed." *Bush v. Lucas,* 462 U.S. at 385, 103 S.Ct. at 2415. The Court recognized that one component of that scheme was the Back Pay Act, which the Court described as "extending the right to backpay and lost benefits to every employee affected by a personnel action subsequently found to be unjustified." *Id.* at 385 n. 25, 103 S.Ct. at 2415 n. 25. Our holding that Fausto is protected by the Back Pay Act is not contrary to Supreme Court precedent.

### B. *Federal Circuit Precedent*

The government argues that, contrary to the panel's original decision, this court's decision in *United States v. Connolly,* 716 F.2d 882, 886 (Fed.Cir.1983) (in banc), "mandates the result reached by the Claims Court and that we urge here." However, a careful reading of that case reveals that it mandates no such result.

First, in the section of the opinion the government quotes, section III, the court was addressing whether Connolly had "no right *under the Civil Service Reform Act*

to seek review of his dismissal in the Claims Court." *Connolly,* 716 F.2d at 886 (emphasis added). That is not, it bears repeating, the issue here. The court's discussion of that issue is replete with references to rights that were or were not granted by the CSRA:

> The Reform Act ... deliberately precluded such review *under that Act* for probationary employees.... The statutory definition of "employee" denotes the only class of civil service workers entitled to procedural and appeal rights *provided by the Act* ... [C]ourts have concluded that probationary employees may not appeal adverse actions *under the Act.*
>
> . . . .
>
> We think that the legislative history of the Reform Act entirely forecloses the possibility that probationary employees have some sort of unspecified private right of action in the Claims Court *under the Act* to seek judicial review of their removals.
>
> . . . .
>
> ... [w]e find it incongruous to suppose that [a probationary employee] has an implied private right of action *under the Civil Service Reform Act* to seek judicial review of his dismissal.

*Id.* (emphasis added). It was in that context that the court concluded: "Congress has decided against judicial review *in the Reform Act,* and we are not free to disturb that judgment." *Id.* (emphasis added). That conclusion was directed to whether the CSRA granted to probationary employees a cause of action *under that act;* the court's conclusion did not address whether the CSRA had repealed the cause of action which Congress had granted in the Tucker Act/Back Pay Act.

Second, even if the court's discussion could be construed to address a repeal of the Tucker Act/Back Pay Act, *Connolly* is distinguishable because the court in *Connolly* relied on language in the legislative history which specifically revealed the intent of Congress not to grant a cause of

action under the CSRA to probationary employees like Connolly. *Cf. Erika,* 456 U.S. at 207, 211, 102 S.Ct. at 1653, 1655 (Medicare statute *specifically* precluded review in the Court of Claims; "expressions of legislative intent unambiguously support" Court's reading of the statutory language). The government has cited no legislative history of the CSRA expressing a comparable intent of Congress with respect to persons in the excepted service like Fausto.

### C. *Regional Circuit Decisions*

The government asserts that the "weight of appellate authority ... holds that the enactment of the CSRA precludes direct judicial review of personnel claims by federal employees that are not subject to review under the remedial scheme of the CSRA." We have carefully reviewed the cases cited by the government. Those cases are not in conflict with the panel's decision.

In all of the government's cited cases, the employee was subject to the adverse action provisions of the CSRA and was seeking some sort of additional remedy. *Pinar v. Dole,* 747 F.2d 899 (4th Cir.1984) (two day suspension of competitive service employee; no jurisdiction under the provisions of the Administrative Procedures Act); *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982) (reassignment of competitive service employee; no *Bivens* cause of action and no APA jurisdiction); *Braun v. United States,* 707 F.2d 922 (6th Cir.1983) (whistleblower; no first amendment cause of action); *Schrachta v. Curtis,* 752 F.2d 1257 (7th Cir.1985) (denial of transfer or promotion; no implied private right of action in the CSRA); *Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984) (career employee's performance rating; no private cause of action under the CSRA and no APA jurisdiction); *Weatherford v. Dole,* 763 F.2d 392 (10th Cir.1985) (reassignment; no jurisdiction under 28 U.S.C. § 1331); *Hallock v. Moses,* 731 F.2d 754 (11th Cir.1984) (trans-

fer of employee who failed to exhaust her remedies under federal statutes and grievance procedures; failure to state a claim); *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir. 1983) (reassignment of tenured employee; no APA jurisdiction). That is not the circumstance in this case. Although the agency imposed on Fausto the most severe form of personnel action, removal, he was not subject to the adverse action provisions of the CSRA because he was in the excepted service.

### III *Conclusion*

For three decades it has been the well settled law "that an employing agency must comply with a regulation which it considered important enough to promulgate in the first place." *Watson v. United States,* 142 Ct.Cl. 749, 756, 162 F.Supp. 755 (1958). In the Tucker Act and the Back Pay Act, Congress provided a remedy for a federal employee whose agency admittedly did not comply with its own regulation in removing him. For an employee in such a circumstance, the panel originally held, the CSRA did not eliminate the previously existing remedy. The court is not free to dismantle what Congress has so carefully constructed.

The government's suggestion for rehearing in banc is declined. Treating the suggestion as a petition for rehearing, rehearing has been granted to the extent that we have reconsidered our original decision and is otherwise denied.