per curiam:
Petitioner seeks review of a final decision of the Merit Systems Protection Board (MSPB), which sustained the MSPB’s presiding officer’s decision dismissing petitioner’s appeal for want of jurisdiction. The presiding officer found that the action taken by the Department of the Navy in placing petitioner on sick leave did not constitute a suspension within the meaning of 5 U.S.C. §7501(2) (Supp. II 1978), and therefore, that he was not entitled to the procedural protection of 5 U.S.C. §§ 7512 and 7513. Before this court, petitioner seeks restitution of all the annual and sick leave which he had accumulated as of April 3, 1979, the date the Department of the Navy placed him on involuntary leave. He also sues for back pay and for annual leave and sick leave for the period from April 3, 1979 to October 29, 1979, when following certain retirements and transfers, petitioner was returned to duty and has since been working. After hearing oral argument and after considering the briefs of the parties and the evidence presented to the MSPB, we find that the decision of the MSPB was not procedurally defective, and that since the decision is supported by substantial evidence and is not arbitrary, capricious, or contrary to law, it is final under the provisions of the Civil Service Reform Act of 1978.
I.
In January 1979, petitioner was employed as a warehouseman in the Materiel Division, Marine Corps Logistics Base at Albany, Georgia. His job description required that he be able to lift up to 45 pounds, walk, bend, stoop, reach, *720 climb, and "be properly licensed or qualified to be licensed to operate gasoline/electric lift trucks, reach trucks * * * stock selectors * * The reach truck referred to in the job description was a piece of equipment known as a Raymon reach fork, which was in general use in the warehouses where petitioner worked, and the principal factual issue in this case is whether petitioner was physically able or willing to operate the reach fork.
In February 1979, petitioner’s supervisor requested that he undergo a physical examination to determine whether he possessed the physical ability to carry out his duties. He was examined by a physician’s assistant at the Base, who found that petitioner had a longstanding back problem of a chronic nature. Since petitioner had been under the medical care of Dr. A. M. Freeman, an orthopedic specialist, the physician’s assistant referred him to Dr. Freeman for consultation and sent a letter containing petitioner’s job description to the doctor. Dr. Freeman responded by letter of March 8,1979, stating in part:
* * * The job description that you gave in your letter sounds like a little bit too much for him to do at this particular time, especially the lifting, climbing, and long distance walking.
After reviewing this opinion and consulting the occupational health officer at the Base, the physician’s assistant found that the petitioner was physically unable to perform the duties required by his official job description. Thereupon, the acting head of the Storage Section ordered that petitioner be placed on sick leave effective April 3, 1979, until his medical status changed or until he could be assigned to a job for which he was physically qualified.
Petitioner again consulted Dr. Freeman, and as a result, Dr. Freeman wrote a second letter on April 10, 1979, in which he stated:
I recently talked with Mr. Mosely, he states that he can perform all phases of his job as described in his job description except that he can’t use the Raymond [sic] Reach Truck except in an extreme emergency but that he can drive the regular fork lift and stock selectors. The job description furnished me included climbing, however, he states that his job does not require him to do any *721 climbing. He has recently been placed on medications for his arthritis and is much improved with treatment.
Petitioner was not removed from his mandatory sick leave status, and he appealed the Navy’s decision to the Atlanta Field Office of the MSPB on the ground that his involuntary sick leave was in fact a disciplinary suspension within the meaning of 5 U.S.C. § 7501(2). He sought to have the agency’s records corrected to show that he was in a duty and pay status effective as of April 3, 1979, or alternatively, to require the agency to abide by the procedural requirements of 5 U.S.C. §§ 7511, et seq., relating to adverse actions. On July 10, 1979, a hearing was held, and on August 9, 1979, the presiding officer issued his decision in which he found that the action taken by the agency in placing petitioner on sick leave did not constitute a suspension within the meaning of 5 U.S.C. § 7501(2), and that accordingly, petitioner was not entitled to the benefit of the procedural requirements of 5 U.S.C. §§ 7512 and 7513. He found that the petitioner was unwilling to perform the duties of his position as described in his job description and dismissed the appeal for want of jurisdiction. As previously stated, the MSPB upheld this determination.
II.
An employee who is not ready, willing and able to work may be placed on annual or sick leave, or in a nonduty, nonpay status in a nondisciplinary situation. Such action is not considered a suspension. Federal Personnel Manual, ch. 751, subch. l-3(c)(1976).
In the hearing before the presiding officer, there was conflicting evidence regarding petitioner’s willingness or ability to perform the work required by his job description. One of petitioner’s coworkers and his immediate supervisor testified that petitioner never stated to them that he could not operate the Raymon reach fork, and that they had not observed that he experienced any difficulties in performing his duties. His supervisor also stated that he had never ordered petitioner to operate the Raymon reach fork. Petitioner testified that he had never stated that he could *722 not operate the reach fork; that he could indeed operate the equipment, and that management had never asked him to do so. Petitioner’s testimony was contradicted by one of his supervisors, by the physician’s assistant, and by the warehouse manager. All three testified that petitioner had told them that he could not operate the Raymon reach fork, because to do so would hurt his back. Their testimony is corroborated by Dr. Freeman’s letter of April 10, 1979. The petitioner did not offer any medical evidence to controvert the medical opinions regarding his physical condition. Also, there was undisputed testimony by Lt. Col. Glen D. Kelly, Jr., that petitioner suggested to him that petitioner’s job description be modified so as to eliminate the requirements that he be able to climb and to operate the Raymon reach fork. The request was declined.
In reviewing administrative records such as this, we have repeatedly observed that the credibility of the witnesses is to be determined by the trier of the facts and that it was not our function to weigh the evidence as though we were trying the case. Instead, our task is to determine whether on the whole record, the administrative decision is supported by substantial evidence. Applying this test to the record before us, we must conclude that the decision of the presiding officer has substantial support in the evidence and was neither arbitrary nor capricious.
III.
Although petitioner claimed that he was placed in an enforced leave status for disciplinary reasons actuated by personal animus on the part of his superior, petitioner offered no evidence in support of this contention at the hearing. Instead, when he was asked about it, he declined to answer. The only evidence on the point was given by Lt. Col. Kelly, who testified that there was no ill feeling nor animus on the part of management toward the petitioner and that every supervisor he had talked with was anxious to see Mr. Mosely return to work, as soon as he was certified as medically qualified to perform his duties. Since petitioner failed to present any evidence in support of this contention before the Board, we cannot consider it here.
*723 IV.
Petitioner was represented at the hearing by a national representative of the American Federation of Government Employees (AFGE), who was assisted by the president of the local union of AFGE. In his brief to the court, petitioner contends that he did not receive due process of law in the administrative consideration of his case, because he was represented by nonlawyer representatives who, although well meaning, were inadequate and ineffective. Petitioner has cited no authority in support of this position and we know of none. With respect to proceedings before the MSPB, 5 U.S.C. § 7701(a) provides that the appellant shall have the right "to be represented by an attorney or other representative.” 5 C.F.R. § 1201.31 provides that the parties to an appeal shall designate their represenative, and that a party may choose any representative, as long as that person is willing and available to serve. Under the statute and the applicable regulations, it is clear that an appellant in such proceedings may elect to be represented by one who is not an attorney, as long as the designee is willing to serve. Accordingly, we find no merit in the due process argument.
V.
On September 5, 1979, petitioner appealed the initial decision of the presiding officer to the MSPB, which on November 19, 1980, denied the petition for review on the ground that it did not meet the criteria set forth in 5 C.F.R. § 1201.115. This regulation provides in substance that the Board may grant a petition for review when it is established that new and material evidence is available which despite due diligence was not available when the record was closed, or when the decision of the presiding officer is based upon erroneous interpretation of a statute or regulations. The only ground advanced in the petition for review in this instance was based solely on a contention regarding the credibility of the witnesses. It did not meet the conditions set forth in the regulation, and was therefore properly denied.
*724 VI.
Since we have found that the decision of the MSPB was supported by substantial evidence; was not arbitrary or capricious, and did not violate any applicable law or procedure, the Board’s decision is affirmed.