Charles A. THOMAS, Petitioner,

v.

**GENERAL SERVICES ADMINISTRATION,** Respondent.

Appeal No. 84–1487.

United States Court of Appeals, Federal Circuit.

March 4, 1985.

Elliott B. Platt, Philadelphia, Pa., argued for petitioner.

Barry Steinhardt, Philadelphia, Pa., of counsel.

J. Weili Cheng, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Washington, D.C.

Before RICH, DAVIS, and NIES, Circuit Judges.

DAVIS, Circuit Judge.

Charles A. Thomas seeks review of a final decision of the Merit Systems Protection Board (MSPB or Board). 20 M.S.P.R. 688, 84 FMSR ¶ 5391 (1984). The Board concluded that it had no jurisdiction to hear petitioner's appeal from a decision by the General Services Administration (GSA) placing petitioner on enforced leave status. We disagree with the Board's conclusion regarding its jurisdiction, but hold that the record developed below, and the Board's own findings, require that the agency's action be sustained. We therefore reverse the decision of the Board on the matter of its jurisdiction and affirm as to its findings of the facts and remand with instructions to sustain the agency's suspension action.[1]

I.

## Background

Petitioner was a training specialist with the Federal Protective Service (FPS), the division of GSA responsible for law enforcement on government property. In this capacity, he was responsible for training other FPS officers, training and evaluating contract security guard services, and similar duties involving FPS personnel.

Problems within his office arose because petitioner repeatedly exhibited what has been said to be bizarre behavior. Specifically, the agency's charges allege, *inter alia,* that petitioner would level a realistic-looking toy pistol at fellow employees to practice his aim; that petitioner would practice martial arts on soda machines and other objects; and that petitioner on one occasion hacked at a cardboard carton with a scissors while saying "even this is too good for her"—allegedly referring to a fellow employee. According to GSA, petitioner also discussed an incipient revolution (of which he would be a part) with such conviction and in such detail that his fellow employees became nervous in petitioner's presence.

In January 1982 GSA ordered petitioner to submit to a psychiatric fitness-for-duty examination. After the examination, at which the psychiatrist found him to be highly paranoid, GSA placed him on involuntary sick leave. Soon thereafter, on May 22, 1982, the GSA proposed petitioner's suspension from the federal service, citing both his behavior around the office and its adverse impact on the other employees as the cause. In a notice to petitioner, GSA said that the proposed suspension would run until GSA decided whether to apply for disability retirement on petitioner's behalf; if the GSA decided so to apply, the notice continued, the suspension would remain in effect pending a decision on the application. On June 10, 1982, GSA sent petitioner final notice that it had decided to proceed with a disability retirement application. Two weeks later, GSA notified him of its decision to place him on indefinite suspension pending a decision on that application.

Petitioner appealed that GSA decision to the MSPB. In the initial decision, the presiding official reversed the agency's action. He found that none of the particular charges of bizarre behavior supported the action, as each was either in itself explainable in the circumstances or otherwise not sufficiently disruptive as to affect the efficiency of the service. 5 U.S.C. § 7513(a) (1982). The presiding official also concluded that, even if one considered all of the allegations together, the evidence did not support the conclusion that petitioner had a disruptive impact on his office.

The full Board vacated the presiding official's opinion and ruled that it had no jurisdiction to hear the appeal. Relying on its decision in *Mosely v. Department of the Navy,* 4 MSPB 220, 4 M.S.P.R. —— (1980) *aff'd,* 229 Ct.Cl. 718 (1981) (*per curiam*), the Board held that, in order to be an appealable action, the placement of an employee in non-pay status must: (1) be involuntary; (2) occur at a time when the employee is ready, willing and able to work; and (3) stem from a "disciplinary-

1. This case solely concerns petitioner's attack on his suspension. We do not consider or pass

upon petitioner's subsequent removal from his position.

type situation." The Board canvassed the record and determined that, viewing petitioner's behavior in the aggregate, he "was a disruptive, threatening force in his workplace and his behavior was frightening to his co-workers." Because petitioner was not "able to work" as the Board defined it, the MSPB considered that GSA's action did not fit into the category of an "appealable suspension," and the Board dismissed the appeal to the MSPB for lack of jurisdiction.[2]

## II.

### Board Jurisdiction

Under the Civil Service Reform Act of 1978 (the Act), a federal employee has the right to "submit an appeal to the [MSPB] from any action which is appealable to the Board under any law, rule or regulation." 5 U.S.C. § 7701(a) (1982). The Act sets forth certain adverse actions from which employees may appeal, including, *inter alia*, removal, suspension for more than fourteen days, and reduction in pay. *Id.* at § 7513(a), (d) (detailing procedures to govern certain actions and providing for appeal to the MSPB therefrom). The Act also sets forth the nature of these adverse actions. It defines "suspension" as "the placing of an employee, for disciplinary reasons, in a temporary status without duties or pay." *Id.*, §§ 7501(2), 7511(a)(2), 7512(2). We must determine whether GSA's decision to place petitioner on enforced leave constituted an appealable "suspension"; if it did, the Board had jurisdiction over the appeal.

The legislative history of the Act adds little to the statutory definition of "suspension." Congress stated only that it intended to enact "the definition of the term previously adopted by the Civil Service Commission in its policy issuances." S.Rep. No. 969, 95th Cong. 2d Sess. 47 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2769. The Board in *Martin v. Department of the Treasury*, 10 MSPB 568, 12 M.S.P.R. —— (1982), dis-

cussed the prior administrative definition; the Civil Service Commission had defined a suspension as "an action placing an employee in a temporary non-duty and non-pay status for disciplinary reasons *or for other reasons pending inquiry.*" *Id.* at 571, 12 M.S.P.R. at —— (emphasis in original), *quoting* the former Federal Personnel Manual Supp. 752–1, S1–6(a). The Board emphasized the disciplinary aspect of a suspension in *Tyndall v. Department of the Navy*, 5 MSPB 247, 247, 5 M.S.P.R. —— (1981) ("A suspension, as described in 5 U.S.C. § 7501(2) [and incorporated into § 7511(a)(2)], is the placing of an employee, for *disciplinary* reasons, in a temporary status without duty and pay." (Emphasis in original)).

We hold that GSA's action in this case falls within the jurisdiction of the MSPB, whether that action be deemed taken for purely disciplinary motives (in the sense of punishment) *or* whether it was taken because it was necessary in order to place petitioner apart from his fellow workers during the period until the disability application could be acted upon by OPM. If the agency suspended petitioner simply because of his objective conduct—without regard to the possible source of that conduct in some psychiatric condition—the suspension plainly had a disciplinary base. The full Board in its opinion said that Thomas had engaged in "inappropriate, disruptive, and threatening behavior in the workplace"; it further concluded that he was a "disruptive, threatening force in the workplace and his behavior was frightening to his co-workers." The suspension was because of this *conduct*—and, significantly, not because of his own work record. This sort of suspension can fall within the normal meaning of "discipline," *i.e.*, punishment intended as a sanction for improper conduct. *See* 30 Comp.Gen. 342, 343–44 (1951) ("The term 'suspension from the service' as used in [the corresponding statute prior to the Act] primarily is concerned

---

**2.** The agency's application for disability retirement was denied by OPM and he was subsequently removed by his agency. His challenge

to that removal is not at all included in the current appeal. *See* note 1, *supra.*

with charges arising out of an employee's conduct").

On the other hand, if, as the Board thought and appears probable, the suspension occurred because of Thomas' psychiatric problems as disclosed by the psychiatrist's fitness-for-duty report, this appeal to the MSPB was still proper because the suspension was to await the OPM decision as to the disability application. An OPM regulation 5 C.F.R. § 831.1206 provides:

An agency shall retain an employee in an active duty status until it receives the initial decision ... on an agency application for disability retirement, except that the agency on the basis of medical evidence, may place an employee on leave with his/her consent, *or without his/her consent when the circumstances are such that his/her retention in an active duty status may result in damage to Government property, or may be detrimental to the interests of the Government, or injurious to the employee, his/her fellow workers, or the general public.* (Emphasis added.)

If, as may very well be the case, GSA suspended petitioner (until the decision on the application for disability retirement), this was because the quoted regulation authorized GSA to take that course if the circumstances were such that his retention in duty status might be detrimental to the Government's interests and injurious to Thomas' fellow employees.

█ The question then is (on this understanding of GSA's action) whether such a "non-disciplinary" suspension (in the narrow sense of "disciplinary") is appealable to the MSPB under the Reform Act. As we have pointed out *supra*, an employee can appeal "from any action which is appealable to the Board under any *law, rule, or regulation".* (Emphasis added.) As for the "law" here, the prime problem is that

the Civil Service Reform Act seems on its face to define an appealable suspension as having a "disciplinary" component. However, the legislative history indicates that Congress wished to continue the practice of the former Civil Service Commission, and that Commission had specifically defined a "suspension" as including the placing of an employee in a temporary non-duty and non-pay status "for disciplinary reasons *or for other reasons pending inquiry"* (emphasis added). The latter standard squarely covers the type of involuntary suspension envisaged for disability retirement cases by the emphasized portions of 5 C.F.R. § 831.1206 *supra.* We conclude that Congress did not intend, in the Reform Act, to preclude appeals of involuntary suspensions of that character. Such suspensions—which are ordered because the agency believes that the employee's retention on active duty could result in damage to federal property, or be detrimental to governmental interests, or be injurious to the employee, his fellow workers, or the public—are "disciplinary" in the broader sense of maintaining the orderly working of the Government against possible disruption by the suspended employee (pending the determination of that employee's disability retirement).[3]

In addition, the regulation embodied in 5 C.F.R. § 831.1206 can be interpreted—in combination with the statutory right to appeal a suspension longer than 14 days—as implicitly authorizing an appeal to the Board from an agency suspension (of this type) that the employee considers wholly unwarranted.[4] It is hard to believe that this regulation intended to permit a prolonged suspension (*i.e.*, of more than 14 days) to be left wholly to the agency's own judgment even though a comparable suspension of purely "disciplinary" character (in the strict sense) would clearly be appeal-

---

**3.** One accepted meaning of the noun "discipline" reflects this concept of maintaining order. *See* Webster's Third New International Dictionary (1968): "behavior in accordance with the rules (as of an organization)"; "systematic, willing and purposeful attention to the performance of assigned tasks"; "orderly conduct."

*See* also Ballentine's Law Dictionary (3rd ed. 1969): "The maintenance of good order in a voluntary association or club...."

**4.** We have noted *supra* that the Reform Act authorizes appeals from decisions made appealable under a "rule or regulation."

able. The actual impact on the employee would be the same, and there would be no adequate reason for distinguishing between the two (on the question of appealability).[5]

We hold, for these reasons, that the Board did have jurisdiction—contrary to its holding—over Thomas' appeal to it from his suspension.

## III.

### *The Merits*

■ Nevertheless, we need not remand to the Board to determine again whether the suspension was proper. In deciding (on an erroneous legal ground) that it did not have jurisdiction, the Board thoroughly appraised the record and found facts which have a direct bearing on the propriety of GSA's action under the correct theory of jurisdiction. There is no need for a further determination. On the record, the Board would make no other fact findings if we remanded for direct consideration of the merits.

For one thing, the Board considered and accepted the psychiatric fitness-for-duty report of the examining psychiatrist (chosen by petitioner himself) who concluded that Thomas' paranoid personality disorder would tend to lead him to retaliate against fellow workers "in the event of real or fancied mistreatment." The Board also found that "[t]he record is replete with ample, corroborated evidence warranting the agency action in placing [petitioner] in enforced leave without pay [*sic*] status in order to remove him from the workplace," and that GSA had "presented evidence of several incidents illustrative of [petitioner's] inappropriate, disruptive, and threatening behavior in the workplace." In that connection the MSPB summarized the testimony of and memoranda written by Thomas' co-workers—all of which were found to be credible by the presiding official—in which they described petitioner's actions and expressed anxiety regarding petitioner's ability to control his behavior.

The Board acted well within its competence in evaluating the impact of the credible evidence on the propriety of petitioner's remaining on active duty with FPS. We cannot disturb these findings and conclusions because they are supported by substantial evidence on the record as a whole. 5 U.S.C. § 7703(c) (1982).

We therefore reverse the holding of the Board that it lacked jurisdiction over petitioner's appeal. We affirm the Board's fact-findings and remand with instructions to sustain the agency's suspension action.

**REVERSED AND REMANDED WITH DIRECTIONS.**

---

**5.** Neither *Mosely v. Department of the Navy,* 229 Ct.Cl. 718 (1981) nor *Johnson v. Orr,* 747 F.2d 1352, 1353 (10th Cir.1984), nor any of the prior decisions of this court, involved a suspension of the character of the current suspension or a suspension covered by 5 C.F.R. § 831.1206. In the present type of situation there is no need—for an appealable suspension to be present—of the requirement stated in those decisions that (a) the employee be ready, willing and able to work, and that (b) the suspension grow out of a "disciplinary-type situation" (in the strict sense).