**Joseph A. FAUSTO, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 85–2272.**

United States Court of Appeals, Federal Circuit.

Feb. 10, 1986.

Joseph A. Fausto, pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for appellee. Deborah S. Ryan, Office of the Sol., Dept. of the Interior, Washington, D.C., of counsel.

Before RICH, BALDWIN, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Joseph A. Fausto appeals from a decision of the United States Claims Court, reported at 7 Cl.Ct. 459 (1985), dismissing Fausto's complaint and holding that the Civil Service Reform Act of 1978 establishes so comprehensive a scheme for the review of federal employee personnel actions as to preclude jurisdiction in the Claims Court. Alternatively, the court held that he had recovered

all back pay to which he was entitled. We reverse.

## BACKGROUND

On January 8, 1978, Fausto was hired by the Department of the Interior Fish and Wildlife Service (FWS) as an administrative officer for the Young Adult Conservation Corps (YACC) camp at the Back Bay National Wildlife Refuge in Virginia Beach, Virginia. His position was in the excepted service, 5 C.F.R. § 213.3102(hh) (1978), and the term of his appointment was for the duration of the YACC program at the Refuge, not to exceed a certain date. On January 16, 1981, based on charges including the unauthorized use of a government vehicle, FWS removed Fausto for cause. FWS informed him of its decision by a memorandum dated January 2, 1981, however, FWS did not inform him of his grievance rights which included the right to a formal hearing conducted by a grievance examiner.

On September 18, 1981, the FWS permanently closed the camp. Later, by letter dated March 22, 1982, FWS admitted that Fausto had not been apprised of his grievance rights, and offered him the opportunity to challenge his removal.

Fausto filed a formal grievance. On June 30, 1982, FWS concluded, based on the administrative file without a hearing, that he should not have been removed. Instead, FWS imposed a thirty-day suspension without pay for the unauthorized use of a government vehicle (FWS decided the other charges were *de minimis* and warranted no penalty). Accordingly, Fausto received back pay from February 15, 1981, the date the thirty-day suspension would have ended, until September 18, 1981, the date the camp was officially closed.

Claiming that this was inadequate relief, Fausto pursued his administrative claim to the Secretary of the Interior, who upheld the FWS decision. In February 1983, Fausto filed a Back Pay Act action in the Claims Court, seeking back pay for the period of his allegedly unwarranted suspension as well as for the period beyond his separation date.

The government contended that the Civil Service Reform Act (CSRA) enumerated an all-inclusive catalogue of remedies for adverse personnel actions and therefore impliedly precluded judicial review of federal employee claims either in the Claims Court or any other judicial forum. On cross-motions for summary judgment, the Claims Court held for the government.

## DISCUSSION

### I

This case presents a very important question concerning the jurisdiction of the Claims Court. On appeal, the government presses its argument that the CSRA impliedly precludes any judicial review of personnel actions taken against federal employees that are *not* redressable through the scheme of administrative and judicial remedies established by the CSRA. This is the issue we reserved in *McClary v. United States*, 775 F.2d 280, 282 (Fed.Cir.1985). In that case, we considered the Tucker Act jurisdiction of the Claims Court in a case which could have been heard by the Merit Systems Protection Board and held that "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court." *Id.* at 282.

Fausto is a nonpreference eligible employee in the excepted service. This court has earlier ruled in an unpublished opinion that he has no right of redress by appeal to the Board. *Fausto v. Department of the Interior*, 738 F.2d 454 slip op. at 3 (Fed.Cir. 1984).

There is no doubt that prior to the CSRA an employee in Fausto's situation could have maintained a suit in the Court of Claims. An agency regulation, 370 DM 772,3.22A, granted him certain rights and the agency was bound by its own regulation *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959) (Schedule A employee in the Depart-

ment of the Interior); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). A suit for back pay alleging a violation of such regulations was cognizable in the Court of Claims. *Greenway v. United States,* 163 Ct.Cl. 72, 75, 81–82 (1963) (a non-veteran, excepted appointment, probationary employee covered by valid departmental regulation entitled to trial on merits for alleged arbitrary dismissal based on well-pleaded complaint).

By the terms of the Federal Courts Improvement Act of 1982, the Tucker Act/Back Pay Act jurisdiction of the former Court of Claims is now reposed in the Claims Court. The government argues that with respect to federal civilian employee suits concerning personnel actions, the historic Tucker Act/Back Pay Act jurisdiction to review such actions has been repealed by the CSRA.

That argument does not withstand scrutiny in this case. "One canon of construction is that repeals by implication are disfavored." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 133, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) (Rail Act did not repeal the Tucker Act jurisdiction of Court of Claims). In that vein, the Court has stated that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). *See Lovshin v. Department of the Navy,* 767 F.2d 826, 842 (Fed.Cir.1985) (elementary that repeals by implication are not favored and are permitted only to the extent of clear repugnancy). *Cf. Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (regarding the Administrative Procedure Act, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."); *Rosano v. Department of the Navy,* 699 F.2d 1315, 1318 n. 13 (Fed.Cir.1983) (strong presumption against unreviewability in the absence of a specific congressional directive).

One of our predecessor courts recognized that there are "instances of partial repeal of the Tucker Act by laws expressly directing litigation of some class or kind elsewhere." *Fiorentino v. United States,* 607 F.2d 963, 969, 221 Ct.Cl. 545 (1979). The rule in *McClary* is an example of such an instance; that is, as to actions covered by the CSRA, Congress expressly directed litigation to the Board with judicial review, less certain exceptions, exclusively in the Federal Circuit. The same cannot be said regarding actions not covered by the CSRA; that is, Congress has not expressly directed litigation elsewhere.

Nevertheless, the government argues that this case is controlled by *United States v. Connolly,* 716 F.2d 882 (Fed.Cir. 1983) (in banc). The government, however, misapprehends our holding in that case. The court held that the Claims Court had no Tucker Act jurisdiction over Connolly's claims not because the court's Tucker Act jurisdiction had been repealed but rather because Connolly, as an employee of the Postal Service, was not in a position to invoke a substantive right grounded in a regulation of an executive department. *Connolly,* 716 F.2d at 885. "Only the regulations of an 'executive department' can form the basis of a regulatory claim cognizable under Tucker Act jurisdiction." *Id.* The clear import of that pronouncement is that the regulations of an executive department *can* form the basis for a regulatory claim cognizable under Tucker Act jurisdiction. Similarly, Connolly's Back Pay Act claim provided no jurisdiction because Connolly "failed to show that his separation from the Postal Service violated any relevant statute or regulation covered by the Tucker Act." *Id.* at 887. Likewise, Connolly's constitutional claim provided no jurisdiction for a back pay cause of action under the Tucker Act because no "money-mandating pay statute exists for Postal Service employees." *Id.*

■ In contrast, Fausto does invoke a right grounded in a regulation of an executive department as required by the Tucker Act and a money-mandating pay statute

does exist for Department of the Interior employees like Fausto. Therefore, Fausto's claim falls within the terms of the Tucker Act. Both the Supreme Court and this court have recognized that if "a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983), *quoted in United States v. Connolly,* 716 F.2d at 886. Thus, this is not a case where an existing remedial system is being "augmented by the creation of a new judicial remedy." *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2416, 76 L.Ed.2d 648 (1983). Rather, this case merely recognizes the remedy under the Tucker Act and the Back Pay Act which Congress created many years ago. The correct inquiry is whether Congress has in the CSRA withdrawn the Tucker Act remedy that would otherwise exist. *See Regional Rail Reorganization Act Cases,* 419 U.S. at 126–27, 95 S.Ct. at 349–50. As to one in Fausto's situation, we conclude that Congress has not. If a federal civilian employee is granted rights by an executive department regulation and if that employee is accorded no right of redress by appeal to the Board under the CSRA, then the CSRA does not operate to repeal the Tucker Act/Back Pay Act jurisdiction of the Claims Court. We leave for another day whether this same rule applies to the vindication of rights granted by statute or by the Constitution. Accordingly, the Claims Court's decision that it lacked jurisdiction is reversed.

## II

The Claims Court held in the alternative, assuming it did have jurisdiction, that Fausto had received all the back pay to which he was entitled. Fausto argues that he is entitled to back pay through February 1, 1983, the date the agency corrected his records. He also argues that he is entitled to back pay for the time during which he was constructively suspended, January 17, 1981, through February 15, 1981.

### A

■ His first argument requires little discussion. The purpose of the Back Pay Act is "to compensate employees for pay which they would have earned but for the wrongful separation." *Everett v. United States,* 340 F.2d 352, 355, 169 Ct.Cl. 11 (1965). Notwithstanding the result that might obtain in a different factual setting, the factual setting here is controlled by *Kozak v. United States,* 458 F.2d 39, 198 Ct.Cl. 31 (1972). In that case, the court held that a former employee of the Library of Congress who arbitrarily had been denied his assignment rights in a reduction in force was entitled to back pay to the date the library division in which he had been employed was abolished. Just as Kozak's recovery could not extend beyond the date his division was abolished, so Fausto's recovery can not extend beyond September 18, 1981, the date his camp was officially closed.

### B

■ Fausto's other argument has stronger support. One of this court's predecessors has held that an unlawful administrative action depriving a claimant of a procedural right voids the action and leaves the employee entitled to his pay otherwise due *until* proper procedural steps are taken toward disciplining him. *Garrott v. United States,* 340 F.2d 615, 622, 169 Ct.Cl. 186 (1965); *see also Hanifan v. United States,* 354 F.2d 358, 364, 173 Ct.Cl. 1053 (1965) (preference eligible employee deprived of procedural right must be regarded as not yet lawfully removed and thus entitled to his pay otherwise due). Applying those principles to this case compels the conclusion that Fausto was effectively on the rolls (not exceeding the date his job was abolished) *until* proper procedural steps were taken, and is entitled to his pay otherwise due, that is, for the period of his constructive suspension.

This is entirely consistent with *Gratehouse v. United States,* 512 F.2d 1104, 206 Ct.Cl. 288 (1975). In that case the court

observed that the consèquences of a refusal to accept an agency's offer to remedy a procedural error depended on the circumstances, noting that an agency has the inherent power to reconsider and change a decision if it does so within a reasonable period of time. "What is a short and reasonable time period will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years." *Id.* 512 F.2d at 1109. Here the agency's reconsidered decision was issued one and one-half years after its original decision. The government has not argued that unusual circumstances existed, and our review of the record reveals none. Indeed, it appears from the record that the agency's belated recognition of Fausto's regulatory rights resulted from his own efforts. On the facts of this case we conclude that a reasonable time for reconsideration had expired, and the agency no longer had the opportunity to correct the procedural error retroactively. *See id.* Accordingly, Fausto (until his camp was closed) "in effect was never separated and never stopped drawing his pay." *Id.* at 1110.

The decision of the Claims Court is reversed and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.