**Robert M.T. WILSON, Appellant,**

v.

**Thomas TURNAGE, Director, Selective Service System, Appellee.**

**Appeal No. 85–2270.**

United States Court of Appeals, Federal Circuit.

May 20, 1986.

---

George M. Chuzi, Kalijarvi & Chuzi, Washington, D.C., argued, for appellant. With him on brief was June D.L. Kalijarvi.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director.

Before BALDWIN, Circuit Judge, COWEN, Senior Circuit Judge, and SMITH, Circuit Judge.

COWEN, Senior Circuit Judge.

Appellant, Robert M.T. Wilson, appeals from a decision of the United States District Court for the District of Columbia, which denied his application for attorney fees under the Back Pay Act, 5 U.S.C.

§ 5596 (1982). For the reasons to be set forth, we affirm.

## BACKGROUND

### A. *The Agency's Actions*

In 1978, the appellant, Wilson, worked as an Operations Evaluation Specialist, GS–13, with the Selective Service System (Selective Service or agency). He was responsible for analyzing and evaluating the agency's ability to mobilize forces in the event of a national emergency. As a result of this work, he became concerned that the agency was unable to meet the statutory preparedness requirements established in section 10(h) of the Military Selective Service Act, 50 U.S.C. app. § 460(h).

Between November 6 and November 25, 1978, after his superiors had apparently ignored his efforts to address the problem, Wilson delivered material outlining his concern over military preparedness to the Secret Service detail at the White House for transmittal to President Carter. The Secret Service informed the agency of Wilson's correspondence with the President, and provided the agency with copies of the material Wilson had delivered.

Shortly thereafter, Wilson's supervisor reviewed some of the correspondence with the Chief of Mental Health Services at Malcolm Grow Air Force Medical Center, who advised that Wilson's mental health should be further evaluated. To that end, by letter of November 28, 1978, the Administrative and Logistics Manager of the Selective Service directed Wilson to undergo a psychiatric fitness-for-duty examination, and placed him on enforced sick leave status effective immediately, pending receipt of the evaluation report.

Wilson refused to submit to an examination, and on April 25, 1979, the agency applied to the Office of Personnel Management (OPM) for an agency-filed disability retirement for Wilson. However, the OPM remanded the application to the agency, because it had failed to comply with the conditions for filing such an application.

Specifically, the OPM found that the agency failed to make a preliminary determination that Wilson's performance, attendance, or behavior were below an acceptable level. Furthermore, the OPM found that the agency had not made a *prima facie* case that his service was not useful or efficient. The OPM decision stated that the letters Wilson had written to the President were not the type of behavior which related directly to his performance or constituted a basis for separation.

After the agency resubmitted the application for disability retirement on August 23, 1979, the OPM again remanded it to the agency, stating that the agency still had not complied with the requisite procedures for retiring Wilson. Again, the OPM stated that the evidence submitted by the agency was not substantive evidence which clearly and convincingly showed Wilson's inefficiency. The OPM suggested that because of the lapse of time, the agency should consider terminating the application and, at the very least, restore Wilson to active duty status while proceeding with the application. The agency did neither.

### B. *Wilson's Attempts to Obtain Relief*

While the agency was pursuing the application for disability retirement, Wilson sought several avenues of relief. First, on February 27, 1979, he filed an administrative appeal with the Merit Systems Protection Board (MSPB or Board). The MSPB, however, dismissed the appeal, stating that the enforced sick leave imposed was not used in a personal, disciplinary-type situation, and thus, was not a suspension appealable to the MSPB under the civil service laws. Subsequently, Wilson appealed the MSPB's decision to the United States Court of Claims, but, as hereinafter noted, that appeal was eventually withdrawn, pursuant to a settlement agreement between Wilson and the Selective Service.

Second, also on February 27, 1979, Wilson filed a complaint with the Office of the Special Counsel to the MSPB, alleging harassment and retaliation. On October 23, 1979, the Office of Special Counsel released the report of its investigation in

which it found that Selective Service had violated several laws and regulations in the actions taken against Wilson. The Special Counsel specifically noted that the agency was remiss in its "capricious attitude toward Mr. Wilson and in its failure to consider his due process rights * * *." The Special Counsel found, however, that the evidence did not reveal that the agency's actions were the result of reprisals against Wilson for his disclosure of information relating to the Selective Service.

Third, on April 4, 1979, Wilson filed a complaint in the United States District Court for the District of Columbia, seeking injunctive relief against the agency and requesting restoration to his former position. Although the district court had originally granted Wilson's request for a temporary restraining order on April 5, 1979, it vacated that order on April 11, 1979. After the district court denied Wilson's reapplication for a temporary restraining order, Wilson appealed. On April 25, 1979, a panel of the United States Court of Appeals for the District of Columbia Circuit granted Wilson's request for an injunction to maintain the status quo, but later the court lifted that order. The appeal remained pending until it was withdrawn as part of the settlement agreement.

## C. *The Settlement*

On December 7, 1979, the agency and Wilson reached a settlement agreement. Although not admitting a violation of any law, the agency nevertheless reinstated Wilson to active duty status as Writer/Editor, GS–13, effective December 10, 1979, and retroactive to November 28, 1978. The agency also agreed to restore all of his annual and sick leave used during the enforced leave period, to pay all back pay for the period of leave, to reimburse him for benefits he would have earned retroactive to November 28, 1978, and to expunge from his records any reference to the directive that he undergo a psychiatric fitness-for-duty examination. For his part, Wilson agreed to dismiss his appeal in the District of Columbia Circuit, his action in the district court, and his suit in the Court of Claims. Under the settlement agreement, the parties left for further negotiations, and if necessary, for decision by an appropriate court, Wilson's request for attorney fees and costs.

## D. *The Decisions of the District Court and the District of Columbia Circuit On the Attorney Fees Issue*

On June 23, 1981, Wilson filed a motion with the district court for an award of attorney fees under the Back Pay Act, 5 U.S.C. § 5596. Following a report and recommendation by a magistrate, the district court denied the request and held that since an administrative proceeding was pending as of November 28, 1978, an award of attorney fees was barred by the "Savings Provision" of the Back Pay Act. As part of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, § 702, 92 Stat. 1111, 1216, Congress had amended the Back Pay Act to authorize the award of reasonable attorney fees related to a personnel action. 5 U.S.C. § 5596(b)(1)(A)(ii) (1982). The CSRA became effective on January 11, 1979, but included the following Savings Provision:

No provision of this Act * * * shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

Pub.L. No. 95–454, § 902(b), 92 Stat. 1224 (codified at 5 U.S.C. § 1101 note (1982)).

Wilson appealed the district court's decision to the District of Columbia Circuit, which initially held that the Savings Provision did not bar an award of attorney fees to him. *Wilson v. Turnage*, 750 F.2d 1086 (D.C.Cir.1984). The case was remanded to the district court for a determination of an appropriate amount, but before the district court acted on the remand, the District of Columbia Circuit, *sua sponte*, vacated its decision and transferred the case to this court. *Wilson v. Turnage*, 755 F.2d 967 (D.C.Cir.1985).

## DISCUSSION

### A.

The Back Pay Act, as amended by the CSRA, provides in pertinent part:

An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

\*   \*   \*   \*   \*   \*

(ii) reasonable attorney fees related to the personnel action * * *.

5 U.S.C. § 5596(b)(1)(A)(ii) (1982).

■ The primary issue to be decided in this appeal is whether the letter of November 28, 1978, which directed the appellant to undergo a psychiatric evaluation and placed him on leave, was an "administrative proceeding pending" within the meaning of the Savings Provision of the CSRA.[1] The term "administrative proceeding" is not defined in the CSRA, and its legislative history is of little help in interpreting the Savings Provision. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 115–16 (1978); H.R. Rep. No. 1403, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723.

Appellant argues that the agency's notice of November 28, 1978, was merely a personnel action and not an administrative proceeding, and that the Savings Provision does not bar an award of attorney fees. He points to 5 U.S.C. § 2302(a)(2)(A) (1982), which defines personnel actions to include a disciplinary or corrective action. After carefully considering appellant's argument and the authorities he cites, we find that his analysis of the statute does not resolve the issue confronting us. The distinction appellant draws between the term "personnel action" and the term "administrative proceeding" does not establish when an administrative proceeding is pending for purposes of the Savings Provision.

Because the language of the statute does not show Congress' intent, we agree with the district court that we should be guided by the regulation promulgated by the MSPB, which implemented and construed the Savings Provision. The regulation provides in pertinent part:

(b) *Administrative proceedings and appeals therefrom.* No provision of the Civil Service Reform Act shall be applied by the Board in such a way as to affect any administrative proceeding pending at the effective date of such provision. "Pending" is considered to encompass existing proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review on January 11, 1979, the date on which the Act became effective. An agency proceeding is considered to exist once the employee has received notice of the proposed action.

5 C.F.R. § 1201.191(b) (1985).

■ The courts accord great deference to interpretations of a statute by an agency

---

1. Although the Government initially argued in its brief that appellant's right to recover attorney fees is barred because there had been no finding by an "appropriate authority" that he was affected by an unjustified or unwarranted personnel action, the Government withdrew this contention on March 3, 1986.

The magistrate's report to the district court concluded that the relief obtained by appellant under the settlement agreement was sufficient to establish that he was a "prevailing party." He also concluded that there was no necessity for a formal finding by a court or administrative authority of an unjustified or unwarranted personnel action, because the settlement agreement provided relief predicated on the principle that the personnel action was unjustified and unwarranted. We agree with these conclusions, particularly in view of the rulings of the OPM on the agency's application for Wilson's disability retirement and the findings of the Office of Special Counsel of the MSPB. *See also Hoska v. United States Department of the Army,* 694 F.2d 270, 273–74 (D.C.Cir.1982).

which is charged with its administration. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). We may not reject the agency's interpretation unless there are compelling reasons why we should not follow it. *Aero Mayflower Transit Co., Inc. v. ICC,* 711 F.2d 224, 228 (D.C.Cir.1983). We cannot say that MSPB's interpretation of the Savings Provision in the quoted regulation is inconsistent with the language of the statute, its legislative history, or the purposes of the CSRA. Moreover, several courts have upheld the MSPB's interpretation of the Savings Provision in cases involving other adverse actions against employees. *See Glenn v. MSPB,* 616 F.2d 270, 271 (6th Cir.1980) (per curiam); *Ellis v. MSPB,* 613 F.2d 49, 51 (3d Cir.1980) (per curiam); *Kyle v. ICC,* 609 F.2d 540, 542–43 (D.C.Cir.1980) (per curiam); *Motley v. Secretary of the Army,* 608 F.2d 122, 123 (5th Cir.1979) (per curiam); *Gaskins v. United States,* 221 Ct.Cl. 918, 919–20 (1979). The District of Columbia Circuit in *Kyle* expressly held that the MSPB properly construed the Savings Provision as meaning that administrative proceedings existed in all cases where employees received notice of proposed personnel actions before, but who had their cases decided by the MSPB after, the effective date of the CSRA.

■ When the quoted regulation is applied to the facts in this case, it is clear that this court's recent decision in *Thomas v. GSA,* 756 F.2d 86 (Fed.Cir.1985), compels a conclusion that the notice of personnel action was an "administrative proceeding pending" on the effective date of the CSRA within the meaning of the Savings Provision. In *Thomas,* the GSA had placed its employee on involuntary sick leave pending a decision on a disability retirement application filed by the agency pursuant to 5 C.F.R. § 831.1206. Thomas appealed to the MSPB, which held that it had no jurisdiction to hear the appeal, because, in addition to other requirements, the suspension of Thomas did not stem from a disciplinary-

type situation. In reversing the decision of the MSPB, this court held that Congress intended to define "suspension" in accordance with the definition of that term which had been adopted by the Civil Service Commission in its policy issuances. Since the policy issuances of the Civil Service Commission defined "suspension" as "an action placing an employee in a temporary non-duty and non-pay status for disciplinary reasons, or for other reasons pending inquiry," the court held that the placement of Thomas on involuntary sick leave and his non-disciplinary suspension was an action which was appealable to the MSPB.

Although there are insignificant factual differences between the *Thomas* case and this case, we hold that *Thomas* is controlling. Since the 1978 action of the Selective Service in *Wilson* was appealable to the MSPB, despite its decision to the contrary, the agency action was an "administrative proceeding pending" at the time the CSRA became effective. Accordingly, we conclude that the Savings Provision of the CSRA precludes appellant's right to recover attorney fees under the provisions of the Back Pay Act, as amended.

### B.

■ There remains for consideration, appellant's argument that the Government is barred from relying on the decision in *Thomas* by the doctrines of *res judicata* and collateral estoppel. Appellant argues that the MSPB decision of June 15, 1979, which held it had no jurisdiction over his appeal from the order placing him on enforced sick leave, is a final and binding decision which may not be relitigated. The doctrine of *res judicata* applies to prevent repetitious litigation on the same cause of action. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). But, where a second suit is brought upon a different cause of action, *res judicata* has no force or effect. *Federal Trade Commission v. Motion Picture Advertising Service Co., Inc.,* 344 U.S. 392,

73 S.Ct. 361, 97 L.Ed. 426 (1948); *Creek Nation v. United States*, 168 Ct.Cl. 483, 488 (1964). Even if we assume arguendo that the MSPB decision which dismissed Wilson's appeal for lack of jurisdiction was a final decision, the conclusion is inescapable that his application for attorney fees is a cause of action entirely different from his appeal to the MSPB, which was based upon an alleged illegal suspension.

█ If we proceed on the same assumption, it is equally clear that collateral estoppel, or issue preclusion, does not apply in this case. Prior decisions act as collateral estoppel for subsequent actions as to those matters actually presented and determined in the first suit. However, "where the situation is vitally altered between the time of the first judgment and the second, the prior determination is not conclusive * * * [and] a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Commissioner v. Sunnen*, 333 U.S. at 600, 68 S.Ct. at 720. There is no doubt that the decision of this court in *Thomas* was such an intervening change in the legal atmosphere that it renders the bar of collateral estoppel inapplicable in this case. *Texaco, Inc. v. United States*, 579 F.2d 614, 217 Ct.Cl. 416 (1978).

## CONCLUSION

This is a case in which appellant's persistent efforts to vindicate his rights have been hampered by the law's delay. The delay is indeed regrettable, and we can understand appellant's frustration at the turn of events in this litigation. However, we are bound by the doctrine of *stare decisis* and are not empowered to grant the extra-legal relief which would be entailed in holding that appellant is entitled to recover attorney fees in this case. Accordingly, we conclude that the decision of the district court must be sustained.

AFFIRMED.