**Wilfred I. BIVENS**

v.

**The UNITED STATES.**

No. 537–84C.

United States Claims Court.

July 14, 1987.

Robert F. Hagans, Jr., Norfolk, Va., attorney of record for plaintiff.

Terrence S. Hartman, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

This civilian pay case is currently before the Court on defendant's motion for summary judgment. At issue is whether the Civil Service Reform Act of 1978 precludes this Court from deciding plaintiff's claim for wages and allowances lost during a period in which Mr. Bivens was involuntarily placed upon leave without pay by the Department of the Navy pending the plaintiff's application for disability retirement. Also at issue is whether the Court has jurisdiction to entertain Mr. Bivens' claim for medical expenses.

For the reasons discussed herein, the Government's motion for summary judgment for lack of jurisdiction is granted and the complaint is to be dismissed.

## Facts

In July 1980, the plaintiff, Mr. Wilfred I. Bivens, a tools and parts attendant (WG–06) at the Norfolk Naval Shipyard with some 28 years of federal service, underwent a routine physical examination. The examining physician, Dr. H.B. Eisberg, informed the plaintiff that he was medically unfit to continue in his present job. Dr. Eisberg also allegedly advised the plaintiff that he would have to seek disability retirement because of his permanent medical condition. As a result, on September 17, 1980, the plaintiff submitted an application for disability retirement to the Office of Personnel Management.[1] On October 8, 1980, Dr. Eisberg signed the medical evaluation and report which placed the plaintiff in "Class III. Not Qualified for any Duty in [the] Shipyard" status. Dr. Eisberg checked the III–B block which was designated as "[n]onwork status—permanent[,] retirement or separation is recommended."

Because of the plaintiff's III–B medical status, the Shipyard would not allow him to continue to work pending his application for disability retirement. When the plaintiff's annual and sick leave ran out on December 10, 1980, the Shipyard involuntarily placed the plaintiff on leave without pay. Subsequently, Dr. George M. Smith, Medical Director of the United States Office of Personnel Management, concluded that Dr. Eisberg had incorrectly diagnosed the plaintiff as having permanent disabling medical problems. Accordingly, the plaintiff's application for disability retirement was denied by the Office of Personnel Management (OPM) on March 24, 1981. The plaintiff sought reconsideration of this denial, but his request for disability retirement was again denied on September 4, 1981.

On September 25, 1981, the plaintiff appealed OPM's disability retirement decision to the Merit Systems Protection Board (MSPB). While his appeal was pending, the plaintiff sent a letter dated January 6, 1982 to the Shipyard requesting that he be allowed to return to work and that he be compensated for lost wages. The Shipyard informed the plaintiff, however, that he was precluded from returning to work until the appeal of the OPM decision denying his disability retirement was resolved. As a result, and because plaintiff believed that he would then be able to return to work, the plaintiff requested the MSPB to dismiss his appeal. On February 24, 1982, the MSPB granted the plaintiff's request and dismissed his appeal for disability retirement. One week later on March 3, 1982, the plaintiff again contacted the Shipyard and requested that he be allowed to return to work and that he be compensated for lost pay and allowances.

At the request of the Shipyard, the plaintiff underwent another medical examination to determine whether he could perform his duties. A Shipyard doctor, however, once again classified the plaintiff as "III–B Nonwork status—permanent[,] retirement or separation is recommended." On May 26, 1982, the Shipyard asked the plaintiff to have his own private doctor submit information regarding his fitness for duty within a specified period of time. After that time had elapsed without the plaintiff's doctor submitting any information, the Shipyard ordered the plaintiff to submit to a fitness-for-duty examination, which could be performed by the Navy's occupational health doctor or by a certified physician suggested by the plaintiff. Thereafter, on January 13, 1983, based upon an examination performed by the plaintiff's doctor, the Shipyard medical officer reclassified Mr. Bivens as "II–B," which indicated that Mr. Bivens was not qualified for full duty and that an altered fitness work assignment was recommended. On February 3, 1983, due to his permanent physical restrictions, the plaintiff agreed to return to work at a lower graded supply clerk position, rated at GS–3.

On October 19, 1984, plaintiff filed his complaint in this Court asserting jurisdiction on the basis of 28 U.S.C. § 1346(b)

---

1. For purposes of this motion, defendant has agreed that, in 1980, Mr. Bivens *involuntarily* filed an application for disability retirement.

*See* Defendant's Reply to Plaintiff's Opposition to Defendant's Motion For Summary Judgment.

(1982) and 28 U.S.C. § 2671, *et seq.* (1982). On January 28, 1985, defendant filed a Motion to Dismiss arguing that the plaintiff's complaint sounded in tort and that 28 U.S.C. § 1346(b) (1982) speaks to jurisdiction in the United States District Courts. Prior to responding to defendant's motion, plaintiff moved to amend his complaint to assert jurisdiction based on 28 U.S.C. § 1491 (1982); 5 U.S.C. §§ 7512–13 (1982); the Back Pay Act, 5 U.S.C. § 5596 (1982) and the Lloyd-Lafollette Act, 5 U.S.C. § 652A (1982). The Court granted plaintiff's motion and his amended complaint was filed on May 2, 1985. Defendant filed its answer on June 10, 1985.

In an order dated June 19, 1985, this Court determined that neither sections 7512–13 nor section 652A of title 5 of the United States Code provided jurisdiction over plaintiff's complaint. Left undecided was the issue of whether jurisdiction could be maintained pursuant to the Court's historic Tucker Act jurisdiction and the Back Pay Act. The defendant's Motion to Dismiss, therefore, was denied without prejudice. Specifically, the Court determined that the following two jurisdictional issues required further briefing: "(1) whether the Civil Service Reform Act of 1978 precludes this Court from asserting jurisdiction over this matter at all; and (2) whether the Back Pay Act, in the instant context, fails to confer jurisdiction on this Court over *any* 'unjustified or unwarranted personnel action,' even where the plaintiff alleges a specific violation of a Government or agency personnel regulation or statute that is unrelated to disciplinary matters."

The defendant filed its current motion for summary judgment on June 26, 1986. The Government contends that this Court has no jurisdiction to entertain the plaintiff's claims for wages and allowances lost during the timeframe in which he was allegedly placed on leave without pay against his will pending his application for disability retirement. The Government argues that the Civil Service Reform Act of 1978 provides a means of redress by appeal to the Merit Systems Protection Board for an involuntary suspension without pay, and that this statutory appeal route precludes any appeal on the same grounds to the Claims Court. Thus, jurisdiction rests with the Merit Systems Protection Board and not with the Claims Court. Additionally, defendant asserts that the plaintiff has not and cannot cite any contract with the United States, regulation, statute or constitutional provision that could fairly be construed as mandating the payment of his medical expenses.

Plaintiff, on the other hand, asserts that because he was suspended for a "completely nondisciplinary reason," the CSRA is inapplicable and jurisdiction can be properly exercised by this Court. As a result, and because the Back Pay Act requires that he be put in the same position as he would have been had the erroneous action not occurred, plaintiff argues that he is entitled to his back pay, allowances and medical expenses.

## Discussion

The United States Claims Court's primary jurisdictional statute is the Tucker Act, 28 U.S.C. § 1491 (1982). This statute provides that an action against the United States may be maintained in the Claims Court if "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1982).

The Tucker Act does not, however, create any substantive right of recovery against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–07, 372 F.2d 1002, 1007–09 (1967). It merely confers jurisdiction upon this Court when a substantive right of recovery exists. *United States v. Testan, supra,* 424 U.S. at 398, 96 S.Ct. at 953; *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Therefore, a claimant must point to some other statute, or a

regulation, contract or constitutional provision in order to establish the substantive right which entitles him to recover against the United States. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. Connolly, supra,* 716 F.2d at 885. Furthermore, the congressional consent to suit in this Court, thereby waiving the Government's traditional sovereign immunity, cannot be implied, but must be unequivocally expressed. *United States v. Testan, supra,* 424 U.S. at 399, 96 S.Ct. at 953–54; *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969).

Accordingly, the plaintiff asserts that the Back Pay Act, 5 U.S.C. § 5596 (1982), provides the substantive jurisdictional basis for an action in this Court. Section 5596(b)(1) of title 5 provides:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee * * * [is entitled to various forms of relief].

■ The Court of Claims has noted that because the Back Pay Act is merely derivative in its application, it "does not, in and of itself, authorize a suit in this court." *Montalvo v. United States,* 231 Ct.Cl. 980, 982 (1982). Rather, for this Court to acquire jurisdiction under the Back Pay Act, the aggrieved party must demonstrate that the alleged "unjustified or unwarranted personnel action" specified in the Back Pay Act violated a statute or regulation covered by the Tucker Act. *See United States v. Connolly, supra,* 716 F.2d at 887; *McClary v. United States,* 7 Cl.Ct. 160, 162 (1984), *aff'd in pert. part,* 775 F.2d 280, 282 (Fed.Cir.1985).

The plaintiff claims that due to the Navy doctors overstating the extent of his disability on three separate occasions, he was subjected to two and one-half years of unwarranted, forced retirement without pay. This factual situation, plaintiff contends, constitutes an unjustified or unwarranted personnel action sufficient to invoke this Court's jurisdiction pursuant to the Back Pay Act.

Before addressing plaintiff's Back Pay Act claim, however, the Court must be satisfied that the Civil Service Reform Act of 1978 (CSRA) does not constitute a jurisdictional bar to plaintiff's action.

The CSRA created an administrative review procedure for certain enumerated adverse actions. These "adverse actions," appealable to the Merit Systems Protection Board (MSPB), include removal; suspension for more than fourteen days; a reduction in grade; a reduction in pay and a furlough of thirty days or less. 5 U.S.C. § 7512 (1982). Additionally, the Court of Appeals for the Federal Circuit has held that "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the [Merit Systems Protection] Board, the employee does not have an independent cause of action in the Claims Court." *McClary v. United States, supra,* 775 F.2d at 282. However, in *Fausto v. United States,* 783 F.2d 1020 (Fed.Cir. 1986), *cert. granted,* — U.S. —, 107 S.Ct. 872, 93 L.Ed.2d 827 (1987), the Federal Circuit further stated that:

> If a Federal civilian employee is granted rights by an executive department regulation *and if that employee is accorded no right of redress by appeal to the [Merit Systems Protection] Board under the CSRA,* then the CSRA does not operate to repeal the Tucker Act/Back Pay jurisdiction of the Claims Court.

*Fausto v. United States, supra,* 783 F.2d at 1023 (emphasis added.)

The Federal Circuit in the *Fausto* case, found Claims Court jurisdiction to exist because the plaintiff was a member of a class of employees specifically exempted from the jurisdiction of the MSPB. *See also Biagioli v. United States,* 2 Cl.Ct. 304 (1983) (Claims Court had jurisdiction over Back Pay Act claim because CSRA procedures were not available to excepted, pro-

bationary employees). Mr. Bivens, however, is not an excepted employee and as a result is subject to the provisions of the CSRA. *Fausto*, in this instance, is not controlling unless the actions of which plaintiff complains were not "adverse actions" within the statutory meaning of 5 U.S.C. § 7512 (1982). Because plaintiff was not permanently removed from employment, was not subjected to a reduction in grade or pay as a result of the Shipyard's original medical determination, and his allegedly involuntary leave did not constitute a furlough for thirty days or less, it is clear that the CSRA will act as a jurisdictional bar to plaintiff's action in this Court *only* if his forced temporary retirement constituted a "suspension for more than fourteen days."

The CSRA defines a suspension as "the placing of an employee, for *disciplinary reasons*, in a temporary status without duties or pay." 5 U.S.C. § 7501(2) (1982) (emphasis added). The United States Court of Appeals for the Federal Circuit, however, has held that although

the Civil Service Reform Act seems on its face to define an appealable suspension as having a "disciplinary" component. * * * [T]he legislative history indicates that Congress wished to continue the practice of the former Civil Service Commission, and that Commission had specifically defined a "suspension" as including the placing of an employee in a temporary non-duty and non-pay status "for disciplinary reasons *or for other reasons pending inquiry*" (emphasis added). The latter standard squarely covers the type of involuntary suspension envisaged for disability retirement cases by the emphasized portions of 5 C.F.R. § 831.1206 *supra*. We conclude that Congress did not intend, in the Reform Act, to preclude appeals of involuntary suspensions of that character. Such suspensions— which are ordered because the agency believes that the employee's retention on active duty could result in damages to federal property, or be detrimental to governmental interests, or be injurious to the employee, his fellow workers, or the public—are "disciplinary" in the broader

sense of maintaining the orderly working of the Government against possible disruption by the suspended employee (pending the determination of that employee's disability retirement).

*Thomas v. General Services Administration*, 756 F.2d 86, 89 (Fed.Cir.), *cert. denied*, 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985) (emphasis added, footnote omitted). *See also Mercer v. Dept. of Health and Human Services*, 772 F.2d 856, 858 (Fed.Cir.1985).

Plaintiff argues that *Thomas* is not controlling because it involved an employee who was suspended because of his bizarre, threatening and frightening behavior; whereas Mr. Bivens' physical condition neither threatened nor endangered his fellow employees. Mr. Bivens noted that the Federal Circuit in *Thomas* was impressed with the fact that the suspension was, in effect, disciplinary; "[t]he suspension was because of his *conduct*—and, significantly, not because of his own work record." *Thomas, supra*, 756 F.2d at 88 (emphasis in original).

■ While it is true that Mr. Thomas' behavior was an ingredient in his suspension, the plaintiff in the case at bar cannot evade the broad holding announced by the *Thomas* court. Although Mr. Bivens was not suspended for disciplinary reasons in the narrow sense, his suspension for medical reasons, pending his application for disability retirement fits squarely within the broader definition enunciated by the Federal Circuit in *Thomas*. Clearly, the Shipyard believed that his continued retention on active duty could be injurious to himself, his fellow employees, and could result in damage to federal property. Under these circumstances, this Court is bound by the precedent established by the Federal Circuit in *Thomas*. *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982); General Order No. 1, 1 Cl.Ct. preceding Rule 1 (1982). Since the MSPB has jurisdiction over the plaintiff's claim, it follows that the Claims Court does not. *McClary v. United States, supra*, 775 F.2d at 282. The plaintiff must utilize the avenue of redress

available under the Civil Service Reform Act of 1978. *See* 5 C.F.R. § 1201.22 (1987).

In addition, the plaintiff has pointed to no statute, regulation, constitutional provision or contract which would mandate the reimbursement of his medical expenses. As a result, this Court finds itself compelled to dismiss the plaintiff's entire action for lack of jurisdiction.

### CONCLUSION

For the reasons discussed herein, defendant's motion for summary judgment is granted and the plaintiff's complaint is to be dismissed.

Each party is to bear its own costs.