Lloyd William **MINER, et al., Plaintiffs,**

v.

Donald D. **ENGEN, et al., Defendants.**

Civ. A. No. 85–1701.

United States District Court,
District of Columbia.

June 9, 1986.

As Corrected June 10, 1986.

Ira M. Lechner, Washington, D.C., for plaintiffs.

Royce C. Lamberth, Nathan Dodell, Asst. U.S. Attys., for District of Columbia, Irene H. Mields, Office of the Chief Counsel, Federal Aviation Admin., Washington, D.C., for defendants.

## MEMORANDUM

SPORKIN, District Judge.

Plaintiffs, law enforcement officers employed by defendant United States of America at Washington National Airport, bring this action under the Tucker Act, 28 U.S.C. § 1346(a)(2), to recover unpaid overtime compensation allegedly due them under the Federal Employees Pay Act (FEPA), 5 U.S.C. 5542(a). Plaintiffs allege that they have been denied overtime wages at time and one-half their basic rate of pay for work they have been allegedly required to perform during their daily "uncompensated" lunch period. Presently pending before the Court is defendants' motion to dismiss for lack of jurisdiction over the subject matter or, in the alternative, for summary judgment.

Defendants argue that the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 7121, precludes plaintiffs from bringing their overtime wage claim before this Court. Defendants aver that under Section 7121(a) of CSRA, the collective bargaining agreement between plaintiffs' union and agency management provides the exclusive procedures for resolving grievances and that plaintiffs are therefore confined to administrative grievance procedures for resolution of their claims.[1]

Plaintiffs counter on two bases. First, they assert that they are seeking to vindicate clearly established statutory rights mandating district court jurisdiction over overtime wage claims. Second, plaintiffs claim that the "exclusivity" of CSRA's procedures were not applicable to them because they neither had a union nor a valid bargaining agreement for a significant period of time encompassed by their suit.

## I

For the purpose of considering the motion before the Court, the following facts are not in dispute. Plaintiffs Lloyd Miner and Marvin Lyons have been employed as full-time police officers at Washington National Airport since February 5, 1984 and November 11, 1984, respectively. Plaintiffs have been regularly scheduled to work five days a week, 8–½ hours per day, one-half hour of which is scheduled to be a duty-free, uncompensated lunch break. Plaintiffs have been regularly paid for 40 hours of work at their basic straight time rate of pay. Plaintiffs allege that they have been and are required to perform services during their 30–minute lunch period on a regular and customary basis. They claim that under FEPA[2] they are entitled to be paid time and one-half their basic rate of pay for 2–½ hours of work (5 days x ½ hour) per week that they have worked in excess of the 40 hour week at straight time rates.

A collective bargaining agreement between the government and The Internation-

---

**1.** Section 7121(a) of CSRA provides in pertinent part that "any collective bargaining agreement shall provide procedures for the settlement of grievances ... and the procedures shall be the exclusive procedures for resolving grievances...." A "grievance" means any complaint by any employee, labor organization, or agency concerning "any claimed violation, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103. Defendants contend that a claim for payment of overtime wages under FEPA is a "grievance" because it involves an interpretation of law affecting conditions of employment. De-

fendants' Memorandum in Support of Motion to Dismiss, p. 5.

**2.** 5 U.S.C. § 5542(a) provides, in pertinent part: "For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek or ... in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid ... one and one-half times the hourly rate...."

al Union of Police Associations, Local # 158 ("IUPA") became effective on June 4, 1982 (the "bargaining agreement"). The bargaining agreement expired by its own terms on June 4, 1984. There was no provision in the agreement for automatic renewal upon its expiration date nor was there any provision in the agreement under which its terms and conditions continued while a new agreement was being negotiated.

Shortly before the bargaining agreement's expiration on June 4, 1984, IUPA notified The Federal Aviation Administration (FAA) that it did not intend to renew or negotiate to amend the bargaining agreement.[3] IUPA advised that the officers of Washington National Airport were considering certification of another union and that IUPA did not intend to oppose or intervene in that effort. IUPA also requested that the FAA terminate the deduction of IUPA dues from the payroll, effective June 4, 1984.

After June 4, 1984, IUPA Local # 158 ceased to function, and surrendered its status, as the certified collective bargaining representative of the police officers at Washington National Airport.[4] It neither sought, received nor processed any grievances with respect to such police officers which arose after June 4, 1984.[5] On November 15, 1984, the Federal Labor Relations Authority (FLRA), in directing that an election of a new union be conducted among the employees that had been represented by IUPA, acknowledged that IUPA "has disclaimed any further interest in representing the employees...."[6] On February 19, 1985, another union was certified by the FLRA to represent the officers as their exclusive collective bargaining representative. A collective bargaining agreement negotiated by the new union and the agency was approved by the FAA on January 7, 1986.

## II

Defendants request the dismissal of plaintiffs' statutory claims on the ground that the CSRA provides the exclusive procedures for resolving such claims. Defendants assert that, notwithstanding the collective bargaining agreement's expiration and IUPA's withdrawal from serving as the collective bargaining representative, plaintiffs were still compelled to utilize the grievance and arbitration procedures mandated by CSRA.[7] Defendants argue that the terms and conditions of the bargaining agreement survived beyond the June 4, 1984 expiration date. They also argue that even though IUPA ceased to function, it was still legally available to bring grievances to arbitration, even with respect to matters arising after June 4, 1984.

The Court cannot accept defendants' position. The expiration of the bargaining agreement and IUPA's cessation as plaintiffs' exclusive bargaining representative meant that CSRA procedures were not fully available to plaintiffs during their tenure with FAA.

It is not contended that the bargaining agreement contained any provision whereby it was automatically renewed upon its expiration date. Furthermore, the bargaining agreement did not provide that its terms and conditions, including its negotiated grievance and arbitration procedures, would be continued after the agreement's expiration. See Article 27 ("Duration") of the Agreement Between Police Branch, Washington National Airport and International Union of Police Associations,

---

**3.** Letter from David Baker, Secretary-Treasurer of IUPA, to FAA, dated May 29, 1984, attached to Affidavit of David Baker (Plaintiffs' Attachment 1).

**4.** Affidavits of David Baker and Ronald Collins, attached as Plaintiffs' Attachment 1 and 2 respectively.

**5.** *Id.*

**6.** Decision and Direction of Election, Federal Labor Relations Authority, November 15, 1984.

**7.** This position is asserted even though defendants concede that if there had never been a collective bargaining agreement, plaintiffs could pursue overtime claims in the district court. Transcript of Hearing, May 12, 1986, p. 34.

Local #158, (Defendants' Attachment 11). Under these circumstances, the Court is not prepared to upset the plain meaning of the collective bargaining agreement where the very parties to the agreement have not included such a provision.[8] *See, e.g., International Organization of Masters, Mates and Pilots v. Victory Carriers,* (Slip Opinion, April 19, 1985, S.D.N.Y.) [Available on WESTLAW, DCTU database] (where duration clause is unambiguous regarding termination, court is not free to look at factors such as industrial practice, usage and custom).

Defendants have not cited a decision of any court that, in the context of CSRA, extends a collective bargaining agreement's terms and conditions beyond expiration. Rather, defendants rely on Federal Labor Relations Authority (FLRA) rulings in other controversies.

The Court has given careful consideration to the FLRA's decisions cited by defendants in this case. Whatever reliance a district court might generally place on FLRA decisions, this Court does not find the cited decisions particularly relevant to the motion before the Court. None of the matters brought before FLRA involved statutorily protected claims for overtime wages.[9] Furthermore, in the FLRA matters, an exclusive bargaining representative was in place at all times relevant to the policies sought to be continued after the expiration of the negotiated agreements. Indeed, the very matters brought before the FLRA were litigated by the employees'

exclusive bargaining representative. The Court also notes that the issue of FLRA's jurisdiction was not raised in those cases.

This case, where the expiration of the bargaining agreement is compounded by the absence of a collective bargaining representative from June 4, 1984—February 19, 1985,[10] does not compel the Court to conclude that plaintiffs' claims were redressable through the arbitration remedy mandated by CSRA.[11] *See Fausto v. United States,* 783 F.2d 1020 (Fed.Cir.1986). Accordingly, defendants' motion is denied in part and deferred in part, as specified below.

### III

■ In their First Amended Complaint, plaintiffs seek to bring this action on behalf of themselves and other law enforcement officers "similarly situated." However, plaintiffs have not alleged any elements of a class action and have not moved for class certification. *See* Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Court will permit the pursuit of claims only as they relate to the plaintiffs, Messrs. Miner and Lyons.

■ Because the Court's ruling on defendants' motion is predicated on an expired bargaining agreement and the absence of a collective bargaining representative, plaintiffs can pursue their overtime wage claims in this Court to the extent they arose at anytime during the period June 4, 1984 to January 6, 1986, the day

---

**8.** Since the terms of the bargaining agreement did not survive the expiration of the agreement, there would not have been "exclusive" procedures under Section 7121 for settlement of grievances.

**9.** In sharp contrast with independent, statutory claims, such as the overtime claims brought in this case, FLRA decisions relied on by defendants involved the posting of materials on bulletin boards, *U.S. Nuclear Regulatory Commission,* 6 FLRA No. 9 (1981); a grievance arising *before* the expiration of the bargaining agreement, *Department of the Air Force, George Air Force Base,* California, 4 FLRA 22 (1980); reduction of holiday staffing, *Federal Aviation Administration, Northwest Mountain Region, Seattle, Wash-*

*ington,* 14 FLRA No. 89 (1984); numerical composition of union-management committee, *Department of Defense, Department of the Navy, Naval Ordance Station,* 4 FLRA 760 (1980).

**10.** Under CSRA, only the collective bargaining representative or the agency can invoke arbitration procedures. 5 U.S.C. § 7121(b), (c).

**11.** Defendants argue that IUPA's withdrawal as the bargaining representative might have resulted in it being charged with unfair labor practices which, in turn, might have compelled it to bring grievances to arbitration. This argument is entirely too speculative given the record that IUPA virtually ceased to function and collected no dues as of June 4, 1984.

before a new collective bargaining agreement was approved by FAA. The Court's decision on the merits of these claims may render moot or, at the least, may be instructional in arriving at a substantive disposition of any overtime claims arising outside this period. Accordingly, the Court defers deciding whether any overtime claims arising outside the period June 4, 1984 to January 6, 1986 can be pursued in this Court.

For the reasons stated, defendants' motion for lack of jurisdiction over the subject matter or, in the alternative, for summary judgment, is denied in part and deferred in part. Plaintiffs can proceed to pursue their overtime claims in this Court to extent they arose at any time during the period June 4, 1984—January 6, 1986.