831 F.2d 306
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
VESPER CORPORATION, by change of name from Alan Wood Steel
Company, Appellant,
v.
LUKENS, INC., Appellee.
 Appeal No. 87-1187
 United States Court of Appeals, Federal Circuit.
 September 18, 1987.
 
 Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Vesper Corporation (Vesper) appeals from the decision of the Trademark Trial and Appeal Board (board) in Opposition No. 69,116, reported at 1 USPQ2d 1299 (1986), granting summary judgment in favor of the opposer Lukens, Inc., thereby sustaining the opposition and refusing registration of Vesper's configuration mark for steel floor plate. We affirm.
 
 OPINION
 
 2
 Having considered Vesper's arguments, we conclude that Vesper has failed to establish any error in the board's analysis. Accordingly, we affirm on the basis of the opinion of the majority of the board which we find thorough, accurate, and entirely in accord with our view that, although opinions subsequent to appellant's prior attempt to register may have contained more refined or elaborate discussions of functionality, there has been no change in the law--certainly no change sufficient to prevent application of issue preclusion in this case.
 
 
 3
 NICHOLS, Senior Circuit Judge, dissenting.
 
 
 4
 Respectfully, I dissent, and with trepidation I take issue with the conclusions of an able panel including the respected and learned author of In Re Morton-Norwich Products, Inc., 671 F.2d 1332, 213 USPQ 9 (CCPA 1982) and Application of Deister Concentrator Company, 289 F.2d 496, 129 USPQ 314 (CCPA 1961). As if that were not enough, I take on a decision by the late District Judge Holtzoff, Alan Wood Steel Company v. Watson 150 F. Supp. 861, 913 USPQ 311 (D.D.C. 1957), certainly the most brilliant judge of our District of Columbia bench in his prime, and one who would never have been reversed if his opinion of his own capabilities had not sometimes surpassed even the capabilities themselves, great as they were.
 
 
 5
 The question is issue preclusion. Judge Holtzoff decided that a certain pattern or mark applied to steel plate was functional, affirming the Commissioner of Patents in his denial of trademark registration. Now, many years later, other parties, but sufficiently in privity for issue preclusion to apply, would litigate the issue again. The opposer, Lukens, who uses the peculiar configuration, would deny Vesper the right to register it, and the PTO agrees.
 
 
 6
 Lukens markets the plate for use as flooring in engine rooms and other locations likely to be dangerously slippery from grease and oil. The alleged mark consists of projections from the surface in the form of diamonds set normally to one another in alternating patterns. The so-called diamonds as drawn resemble almonds seen in cross section. Their utility obviously is that they would tend to stop a slip or slide in any direction. The mark is, therefore, held functional, and therefore, it is held, not registerable. At the risk of being accused of constituting myself a witness, I take judicial notice that any roughness in an otherwise smooth steel plate would perform the same function more or less, and there must be thousands of possible configurations, all equally distinguishable to the eye from the configuration in dispute, that would inhibit slipping and sliding equally well. Judge Holtzoff took the position that the alleged trademark:
 
 
 7
 [W]as used primarily not as an arbitrary means of identifying the plaintiff's product, but to serve a utilitarian purpose, namely, to prevent persons from slipping on the floor. An object performing a utilitarian function may not be registered as a trademark, even if it also identifies the applicant's product.
 
 
 8
 The plain meaning of this is that no marking of this plate could be registered as a trademark unless it left the plate surface perfectly smooth and deriving no benefit from the trademark so far as concerned the safety of users. If Judge Holtzoff did not believe this, his usual facility of self-expression must have strangely deserted him. The fact that possibly thousands of patterns of protrusions could be used was of no avail, for if any one of those were adopted by any maker to identify his product, automatically it would impart some degree of safety and therefore be unregisterable.
 
 
 9
 It seems quite apparent to me that Judge Holtzoff would not have employed so simplistic an analysis if he had had the benefit of In Re Morton-Norwich Products, supra. Without going through the whole intricate line of reasoning of that exhaustive and brilliant opinion, for me it suffices to quote from page 1339:
 
 
 10
 B. Utilitarian means superior in function (de facto) or economy of manufacture, which 'superiority' is determined in light of competitive necessity to copy.
 
 
 11
 As applied to the instant case, this would mean the 'diamond' design applied to the plates is not 'utilitarian' unless another plate manufacturer would have to copy the diamond design in order to achieve the nonskid protection buyers of the article demand. Should it appear, for example, a competitor could achieve at equal cost nonskid safety equal to appellant's by placing on the plate, a plurality of arrows pointing in different directions, then the diamond design is not 'utilitarian' and may not be denied registration on the ground relied on by the board. This is a new analysis not available even to so perceptive a mind as Holtzoff's in 1957. If it had been, he would have referred to it: res ipsa loquitur.
 
 
 12
 It was a tribute to Judge Holtzoff's personal prestige that his simplistic approach is discussed in both the decisions of our predecessor court previously referred to. In Application of Deister Concentrator Company, 289 F.2d at 500, 129 USPQ at 318, Holtzoff is quoted as follows:
 
 
 13
 A novel shape or appearance that is functional in character may not acquire any secondary meaning that would render it subject to exclusive appropriation as a trademark. [Emphasis in original.]
 
 
 14
 And the CCPA's authoring judge dryly comments:
 
 
 15
 We agree with that statement but we observe that it does not tell us how to determine when a novel shape or appearance is 'functional' or whether any shape that performs a utilitarian function falls in that category. [Emphasis in original.]
 
 
 16
 Id.
 
 
 17
 The CCPA also, it says, agrees with appellant that a mark whose primary significance is to indicate origin may be registered notwithstanding 'a modicum of inherent functionality' and 'that outline shape is not required to be wholly useless to qualify for registration.'
 
 
 18
 The references to Alan Wood in In Re Morton-Norwich Products, Inc. 671 F.2d at 1336-37, 213 USPQ at 12, are not, I think, of a nature to exonerate the Holtzoff decision from its glaring failure to tell us how to identify the functional design, and its over-breadth in tainting with functionality any and every design feature that is not wholly useless.
 
 
 19
 The panel admits that opinions subsequent to Holtzoff's may have contained more refined or elaborate discussions of functionality, but says there has been no change in the law. Presumably the panel thinks Holtzoff, had he put his mind to it, could have discovered and used to sustain his result all the elaborate law subsequently articulated. We often write, and sometimes really believe, we are only discovering law that existed all along as a 'brooding omnipresence in the sky.' When we turn to realities, it is far more realistic to suppose even the brilliant Holtzoff could not have employed the analysis displayed in In Re Morton-Norwich Products, Inc. before that opinion was available for him to read. That analysis could not have been merely a matter of restating something already known if so able an intellect as Holtzoff was not able to perform the simple analysis whose absence was pointed out in Application of Deister Concentrator Company, 289 F.2d at 500, 129 USPQ at 318. I am going to come flat out and say Holtzoff would have analyzed Alan Wood, and come to an appropriate result, had he been fortunate enough to write with the guidance before him now given us in Deister, Morton-Norwich, and elsewhere.
 
 
 20
 It is, of course, well known that a decision can be plainly wrong, as Alan Wood was, and still be binding as collateral estoppel in its holding on persons actually parties, or their privies, unless certain conditions are met. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). The one relevant here is whether new principles of law have intervened that make plain the error of the previous determinations. This need not be a new statute, or a decision of the Supreme Court, or other courts, expressly overruling prior decisions. The leading case, Commissioner v. Sunnen, 333 U.S. 591 (1948), displayed none of these. Rather, it was a matter of developing case law. '[A]n intervening legal development which is pertinent * * * and which makes manifest the error of the result reached in 1935 by the Board [of Tax Appeals]. If that is the situation, the doctrine of collateral estoppel becomes inapplicable.' Id. at 603. Later, at 607, the new cases are said to have given 'much added emphasis and substance to that concept, making it more suited to meet the 'attenuated subtleties' created by taxpayers.' This court cites and follows Commissioner v. Sunnen in Wilson v. Turnage, 791 F.2d 151, 157 (Fed. Cir. 1986). Along the same line is Staten Island Rapid Transit Operating Authority v. I.C.C, 718 F.2d 533 (2d Cir. 1983). I view as a contra case Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499 (11th Cir. 1984), cert. denied, 469 U.S. 1191 (1985), which limits the Sunnen doctrine to changes in 'important fundamental constitutional rights.' Id. at 1502. Sunnen itself is not there mentioned or analyzed unless it is one of the 'outdated Supreme Court cases' put aside. Id. at 1503.
 
 
 21
 In Blonder-Tongue v. University Foundation, 402 U.S. 313 (1971), not much is said about the 'change in legal climate,' most of the Court's attention being devoted to the 'full and fair opportunity to litigate' issues, i.e., whether the former loser had the cards stacked against him. It is noted that here, by choosing the district court route of appeal, the loser was able to make use of new testimony, not all of which had been before the board. Also, the election not to appeal Judge Holtzoff's decision is revealing. The Supreme Court does refer (alluding to a patent case) to 'one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit.' This would seem to postulate that a glaring legal error in the former record might preclude a collateral estoppel; in this case, the same role is, I think, arguably played by Judge Holtzoff's manifest inability to foretell how this court and its predecessors would later on handle such a case. However, 'change in legal climate' is the board's real problem.
 
 
 22
 The Supreme Court says in Blonder-Tongue, 402 U.S. at 333-34:
 
 
 23
 But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity.
 
 
 24
 In my view, therefore, the board's grant of summary judgment should be vacated and the cause remanded for reconsideration. The board should be instructed that as a result of the CCPA's efforts, the law respecting functionality is much changed since 1957, and for the better. Registration is no longer barred by an undefined functionality of a design without regard to the purpose the law serves, which is to prevent perpetual monopolization obtained by features appropriate for protection, if at all, by utility or design patents of limited life. The concept of a trademark is no longer limited to a useless marking.
 
 
 25
 The board should consider whether its sense of justice and equity requires perpetuation of a bar to registration based on a manifestly erroneous legal ruling. If it decides a negative as to that, it should further determine whether the proposed mark is registerable regardless of the Alan Wood ruling. So far as any decision the board comes to is based upon collateral estoppel, it is subject to further judicial review for legal error or abuse of discretion.
 
 
 26
 The board has recently in In re Weber-Stephen Products Co. (not yet reported except in Lexis but abstracted at 34 BNA Patent, Trademark & Copyright Journal 374 (June 24, 1987)), applied the analysis taught it in Morton-Norwich to hold a kettle-shaped barbecue grill not 'de jure functional' for registration purposes, i.e., no more functional than alternative designs of grills that work equally well. It is plain to me, therefore, that a supposed collateral estoppel led it astray in the case we are considering.